John LEATHER, Plaintiff–Appellee,

v.

Michael TEN EYCK, individually, Thomas Lindert, individually, Carmine Restivo, Jr., individually, Robert Thoubboron, individually and the County of Putnam, New York, Defendants–Appellants.

No. 00–7703(L).

United States Court of Appeals, Second Circuit.

Jan. 24, 2001.

Paul Schechtman, Stillman & Friedman, P.C., New York, NY; James A. Mitchell, on the brief, for appellants, Ten Eyck, Lindert, Restivo and Thoubboron.

Anthony J. Servino, White Plains, NY, for appellant. The County of Putnam, New York.

Kim Berg, Lovett & Gould, Esqs., White Plains, NY, for appellee.

Present GRAAFEILAND, CALABRESI, Circuit Judges, and PATTERSON,* District Judge.

* The Honorable Robert P. Patterson, Jr., of the    United States District Court for the Southern

*SUMMARY ORDER*

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgement of the district court be and hereby it is AFFIRMED.

## I. BACKGROUND

Defendants Michael Ten Eyck, Thomas Lindert, Carmine Restivo, Jr. & Robert Thoubboron (the "individual defendants"), and the County of Putnam (the "County") appeal from a jury verdict finding that defendants subjected John Leather (the "plaintiff") to selective prosecution in retaliation for the exercise of his right to free speech guaranteed under the First and Fourteenth Amendments, all in violation of 42 U.S.C. § 1983. A summary of the facts underlying the case may be taken from an earlier opinion of our Court:

> Leather's § 1983 claim is based on a course of events that occurred in Putnam County, New York. At that time, Leather was the duly appointed fire coordinator for the County, and the individual defendants were all members of the County Sheriff's Department.[1] In his complaint, Leather alleged that in 1992 and 1993 a fierce debate was taking place in the County over whether the Emergency "911" communications center ("E–911") would be controlled by civilians or by the County Sheriff's Office. Leather maintains that he was a vocal public advocate on behalf of vesting control of the E–911 services in civilian hands, which, he argued, would lead to better emergency services in the community. In contrast, the members of the Sheriff's Office were actively trying to gain control of the E–911 communications center.[2]

> Leather contends that, in retaliation for his public statements, the Sheriff's Office both threatened him (and others who made similar statements) and targeted him for prosecution. Specifically, Leather alleges that on the evening of December 2, 1994, three members of the Sheriff's Department kept him under surveillance while he dined at a local restaurant with his wife and consumed one or more alcoholic beverages. Shortly after he and his wife left the restaurant, Leather was stopped on the road by two of the officers (Ten Eyck and Lindert) and arrested on charges of driving while intoxicated. Thereafter, he was successfully prosecuted on a lesser charge of driving while impaired (because his blood alcohol level, which tested at .09 percent, was insufficient to support a per se finding of driving while intoxicated). He was assessed a $300 fine as well as a $25 surcharge, and his driver's license was suspended for 90 days. Leather did not appeal this conviction, rendered in the Justice Court for the Town of Southeast.

*Leather v. Ten Eyck,* 180 F.3d 420, 422 (2d Cir.1999).

The plaintiff subsequently filed the § 1983 suit now before us and, after a moderately involved procedural history, the case went to trial before a jury. The jury found for the plaintiff, and awarded the plaintiff $200,000 in compensatory damages against all defendants and punitive damages of $435,000 against Robert Thoubboron, $5,000 against Carmen Resti-

---

District of New York, sitting by designation.

1. Defendant Thoubboron was Sheriff of Putnam County, defendant Ten Eyck was a Deputy Sheriff, Defendant Lindert was a Sergeant, defendant Restivo was a Captain, and defendant Stevens was a Senior Investigator.

2. The Sheriff's Office apparently succeeded in its efforts.

vo, $3,000 against Thomas Lindert, and $2,000 against Michael Ten Eyck.[3]

Following the jury's verdict, the defendants moved for judgment as a matter of law on all claims, for a new trial on the issues of liability and damages, and, in the alternative, for a remittitur of the damage awards. The district court denied all defendants' motions save the motion attacking punitive damages. As regards this motion, the district court set aside the punitive damages awards against defendants Ten Eyck, Lindert, and Restivo, finding that the record did not support punitive damages against them. *Leather v. Ten Eyck,* 97 F.Supp.2d 482, 488 (S.D.N.Y.2000) (citing *McCardle v. Haddad,* 131 F.3d 43, 53 (2d Cir.1997) (holding that punitive damages are appropriate in a § 1983 action only when "[a] defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others") (internal quotation marks omitted)).

Furthermore, the district court found that although punitive damages against defendant Thoubboron were permissible, the $435,000 awarded was so large as to shock the conscience of the court and exceed the power of the trial jury under the United States Constitution. *Id.* at 489–90 (citing *BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992)). Accordingly, the district court ordered that unless the plaintiff executed a written remittitur reducing the punitive damages award against defendant Thoubboron to $3,000, a new trial limited to the issue of compensatory and punitive

damages, would be granted. *Id.* at 490–91. Plaintiff executed the remittitur.

Defendants now appeal the modified verdict, raising various issues. The individual defendants argue (1) that the district court made numerous evidentiary errors, and (2) that the representation of the individual defendants and the County by the same counsel was inappropriate. The County, in addition to joining in the defendants' claims of evidentiary error, also argues (3) that because plaintiff's state conviction for driving while impaired remains in full force and effect, his § 1983 claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), (4) that because plaintiff raised the issue of selective prosecution in the state criminal proceeding, his § 1983 claim is barred by the doctrine of collateral estoppel, (5) that the compensatory damages award was excessive, and (6) that the County is not subject to liability for the acts of its employees, *see Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and, in particular, that defendant Sheriff Thoubboron is not a County policy-maker for whose actions the County would be liable, *see Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Finally, the individual defendants add, in their reply brief, (7) that this Court's recent decision in *Diesel v. Town of Lewisboro,* 232 F.3d 92 (2d Cir.2000), entails that plaintiff's § 1983 selective enforcement claim fails as a matter of law.[4]

## II.  DISCUSSION

■ Defendants' first six claims are meritless and may be straightforwardly rejected:

---

3.  The jury also awarded the plaintiff's attorneys legal fees and disbursements.

4.  We note that *Diesel* was decided on November 9, 2000, after the October 2 submission of

the individual defendant's initial brief but before the December 1 submission of their reply brief. It is, therefore, properly raised in the latter brief.

(1) Even if the district court did make the evidentiary errors defendants allege (involving violations of the hearsay rule and of Fed.R.Evid. 404(b)'s rule against character propensity inferences), defendants failed either to object to the admission of this evidence at trial or to request curative jury instructions. Accordingly, we review the district court's evidentiary rulings for plain error only. *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 55 (2d Cir.2000). This standard supports reversal only where a district court's evidentiary ruling, which is always accorded substantial deference, was not only erroneous, but also "result[ed] in a miscarriage of justice or is an obvious instance of misapplied law." *Id.* (internal quotations marks omitted) (alteration in original). Neither of these extreme circumstances applies to the case at bar.

(2) Even though it may have been less than ideal for the individual defendants and the county to be represented by the same lawyer, *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.1984), does not support defendants' claim that this joint representation generated a conflict of interest mandating a new trial. In *Dunton*, the county's defense was that the individual defendant had "act[ed] as an irate husband" and "not even as an officer," so that the tort the plaintiff complained of had, in the most literal sense, nothing to do with the county. *Id.* at 906. In the case at bar, by contrast, it is unquestioned that the individual defendants acted in their official capacities. Furthermore, a necessary element of the conflict of interest claim the individual defendants present is that "counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir.1986). Defendants have presented no evidence of an adverse effect on trial counsel's performance here. Indeed, trial counsel appears vigorously to have pursued defenses available only to the individual defendants, presenting a qualified immunity defense on behalf of the individual defendants and several times moving to dismiss the individual defendants from the case.

(3 & 4) The county's arguments concerning *Heck* and collateral estoppel have already been rejected in our earlier decision in this case. *See Leather*, 180 F.3d at 423–26. The County's reprise adds nothing that would make it proper for us to reconsider them. They must therefore be dismissed.

(5) As defendants themselves in effect admit, their claim of excessive damages turns on the notion that because plaintiff actually drove while impaired by alcohol, he could have been caught and convicted even without defendants' alleged selective enforcement, so that any lost income plaintiff suffered cannot have been proximately caused by defendant's alleged misconduct. But while it is true that "if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996), this rule cannot be applied to the case at bar. Even if plaintiff, once caught, would have been convicted without defendants' misconduct, the jury's verdict shows (see the discussion of *Diesel infra*) that

plaintiff would not have been investigated and caught but for their misconduct. Accordingly, defendants' misconduct did cause plaintiff's lost income, and the damages awarded were not excessive.

(6) Although defendants correctly assert that a county is not generally liable for work-related torts committed by its employees, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *Monell* also makes clear that "[l]ocal governing bodies ... can be sued directly under § 1983 for monetary, declarative, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. And, as defendants acknowledge, the action of a single official with final policymaking authority can generate municipal liability in this way. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In the circumstances of this case, defendant Sheriff Thoubboron was sufficiently a policy-maker for the County for it to be liable for his practices. *Cf. Jeffes v. Barnes*, 208 F.3d 49 (2d Cir.2000) (deeming a New York State Sheriff to be a county's policy making official in a whistle-blowing context).

Finally, defendants' seventh contention must also be rejected, although a slightly longer discussion is needed to explain why.

In *Diesel*, the plaintiff, a New York State Trooper who had assisted in an internal affairs investigation of misconduct by some of his colleagues, brought a § 1983 action alleging that the defendants, who were also members of the New York State Police, had violated his rights under the Fourteenth Amendment by engaging in selective enforcement of criminal laws against him in retaliation for his exercise of his First Amendment rights. Specifically, Diesel claimed that after he had engaged in misconduct (involving the consumption of alcohol while in possession and control of a police vehicle), the defendants had (in retaliation for his earlier cooperation with internal affairs) refused to turn a blind eye to his infraction and, instead of extending him "professional courtesy" and indulgence, had vigorously prosecuted his case.

Although a jury awarded Diesel substantial damages, this Court, on appeal, reversed the judgement, finding that the Diesel's "claim that [the defendant's prosecution of his case] violated his Fourteenth Amendment rights fails as a matter of law." *Diesel*, 232 F.3d at 105. We concluded that the only unequal or discriminatory treatment Diesel had suffered was *the withholding of the preferential treatment police officers usually enjoyed*, which would have immunized him from the consequences of his own serious misconduct. The Court reasoned that Diesel's Equal Protection claim alleged only that he "was deprived of a privileged status to which he had no constitutional entitlement" and that to find that the denial of such preferential treatment constitutes an Equal Protection violation "would stand the Equal Protection Clause on its head." *Diesel*, 232 F.3d at 104.

At the same time, the Court took pains to distinguish Diesel's claim that he was denied "professional courtesy" from another, and very different possible claim, namely that the investigation into his drunk driving was more vigorous than that conducted against the average citizen. As regards this claim, the Court dismissed Diesel's complaint not because it failed to

state a violation of the Fourteenth Amendment but because Diesel had, in fact, presented "no evidence that the [defendants] treated [him] selectively as compared to similarly situated ordinary people." *Id.* The Court, in effect, acknowledged that even though officials cannot sustain a § 1983 retaliation and Equal Protection claim by proving that they were prosecuted more vigorously than is consistent with "professional courtesy," they can sustain such a claim by proving that they were prosecuted more vigorously than is consistent with ordinary police practices. Accordingly, the case before us turns on which side of this distinction Leather's case falls.

Because that question turns on the sufficiency of the evidence presented to the jury, because the record is well-developed on the issue, and out of respect for the district court's docket, we decide the question ourselves rather than remanding the case for further consideration by the district court. And although the district court (reasoning without the benefit of *Diesel,* which was decided after its decision) expressed some uncertainty on its way to upholding the jury's verdict, we have no doubt that on the record before us the evidence given to the jury was sufficient to permit its verdict to stand under *Diesel.*[5]

The charge in response to which the jury returned its plaintiff's verdict stated that the defendants were "permitted and, indeed, . . . required by the law to enforce the law" and that the plaintiff's case depended on his contention that "the defendants in effect watched him, lay in wait for him, knowing that he was in the habit of drinking alcoholic beverages . . . and then driving home after having done so." Indeed, the district court expressly instruct-

ed the jury that it was required to "ascertain whether the plaintiff has proved . . . that the arrest for driving while impaired by alcohol was a calculated event planned ahead of time to punish him for having spoken out on the subject of the E–911 program . . . or simply the result of circumstances . . . which led to a decision to chase the car that he happened to be driving and stop him before the officers acting even knew [who he was]." There was nothing in the charge to the jury to suggest that they could find for the plaintiff if they believed that he had been deprived of the preferential treatment often given by the police to town officials.

Accordingly, the jury, in returning its verdict, must be deemed to have found that the plaintiff was discriminatorily sought out and investigated for drunk driving rather than merely that he, having been caught by non-discriminatory means, was denied the benefit of "professional courtesy."

## III. CONCLUSION

Having considered all of defendants' claims and found them to be without merit, we AFFIRM the decision of the district court.

---

**5.** We note that given defendants' failure to object to the district court's evidentiary rulings, the jury's verdict must be interpreted in light of all the evidence it heard.