10-0529-cv
Brown v. City of Syracuse

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued:  February 7, 2011                    Decided: March 13,  2012)

Docket No. 10-0529-cv
_____

CURTIS BROWN,

*Plaintiff-Appellant*,

*-v.-*

CITY OF SYRACUSE, JOHN FALGE, Individually, JOHN DOE, a fictitious name intended to indicate individual unknown at this time, GARY MIGUEL, in his official capacity as Chief of Police of the Syracuse Police Department,

*Defendants-Appellees*.

_____

Before:

JACOBS, *Chief Judge,* HALL, *Circuit Judge,* and SCHEINDLIN*, District Judge.*[*]
_____

Appeal from an award of summary judgment; Appellant, *inter alia*, argues that the

law of the case doctrine precludes summary judgment with respect to his Title VII, New

_____

[*] The Honorable Shira A. Scheindlin, United States District Court for the Southern District of New York, sitting by designation.

-1-

York Human Rights Law, § 1981, and § 1983 claims. Appellant, an African-American and former Syracuse police officer, was suspended with pay pending investigation of an incident involving a fifteen-year-old girl whom he took to a hotel knowing she was a runaway. He was eventually suspended without pay and terminated. He claims Appellees—the City of Syracuse and certain police officers—discriminated against him by treating him more severely than white officers who committed acts of an equal or more serious nature. Because Appellant's subsequent guilty plea to the charge of Endangering the Welfare of a Child resulted in his automatic termination under New York Public Officers Law § 30(1)(e), he cannot prove an "adverse employment action" for any of the measures taken by his employer after his guilty plea. Further, as a matter of law, Appellant's suspension with pay pending the investigation did not, in these circumstances, amount to an adverse employment action, and Appellant has no constitutionally recognized cause of action for deprivation of "professional courtesy" that police sometimes extend to their fellow officers.

AFFIRMED.

_____

A.J. BOSMAN, Law Office of A.J. Bosman, *for Plaintiff-Appellant*.

JESSICA MCKEE, Assistant Corporation Counsel, (Juanita Perez Williams, Corporation Counsel for the City of Syracuse, *on brief*), *for Defendants-Appellees*.

_____

HALL, *Circuit Judge*:

This is an appeal from the January 12, 2010, judgment of the United States District Court for the Northern District of New York (Hurd, *J.*), granting Defendants-Appellees the City of Syracuse, John Falge, Gary Miguel, and John Doe (collectively, the "Appellees") summary judgment. On appeal, Plaintiff-Appellant Curtis Brown ("Brown") argues, *inter alia*, that this court's prior decision in this case, *Brown v. City of Syracuse* (*Brown I*), 197 F. App'x 22 (2d Cir. 2006) (summary order), establishes the law of the case and that several rulings by the district court following remand conflict with our previous decision. In addition, he contends the district court erred in holding he suffered no adverse employment action based on his pre-termination treatment nor had a cognizable equal protection claim for his alleged deprivation of "professional courtesy."

Brown, a former Syracuse police officer, brought this suit after then-Police Chief John Falge suspended him with pay for an incident that took place in April 2000 involving a fifteen-year-old girl who had left her home and for whom Brown had rented a hotel room while she was missing. Brown, who is African American, charges that the Syracuse Police Department ("SPD") discriminated against him and other minority police officers through disparate disciplinary treatment. He argues that white officers have engaged in similar or, in some cases, worse conduct, yet have been given better treatment by the SPD than minority officers, including him. That more favorable treatment includes allowing officers to resign or retire in lieu of prosecution, allowing them to remain on the job pending an investigation, or not investigating them at all. Brown also alleges that

Appellees violated the Equal Protection Clause of the United States Constitution by suspending him and failing to intervene, as they would have for a white officer, in his eventual prosecution and conviction that stemmed from the incident and the attendant investigation. Brown filed his complaint in 2001, and the Appellees successfully moved to dismiss part of his complaint. After the district court dismissed his remaining claims on summary judgment, he filed an appeal to this court. As discussed further below, we vacated the judgment in *Brown I*.

Following remand, the district court found that Brown's employment relationship with the City of Syracuse terminated upon his conviction of Endangering the Welfare of a Child ("Endangering"), which the New York Court of Appeals has determined is an "oath of office" offense that results in immediate termination upon conviction. *See Feola v. Carroll*, 890 N.E.2d 219 (N.Y. 2008); New York Public Officers Law § 30(1)(e). The district court reasoned that Brown could not use as proof of an "adverse employment action"—a lynchpin of his discrimination claims—any action Appellees took with respect to Brown's employment after the Endangering conviction. The only action alleged to have been adverse prior to the conviction was Brown's suspension with pay and what he asserts was his loss of overtime pay. Relying on *Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006), the district court decided as matter of law that Brown's suspension with pay pending an investigation was not an adverse employment action. It rejected Brown's argument that his loss of overtime pay changed the rule in *Joseph*. The district court also decided that Brown's equal protection argument, for which an adverse employment action

-4-

is not a necessary element, fails under the rationale of *Diesel v. Town of Lewisboro*, 232 F.3d 92 (2d Cir. 2000), which held that a police officer was not entitled to the "professional courtesy" of having his fellow police officers look the other way or otherwise work on his behalf to mitigate criminal charges. *Id.* at 103-04. Both cases, *Joseph* and *Diesel*, along with the decision of the New York Court of Appeals in *Feola*, dictate that we affirm the judgment in Appellees' favor. We write this opinion to explain why Brown's efforts to distinguish *Joseph* fail and also explain why this case does not present a "selective treatment" claim cognizable under *Diesel*.

## BACKGROUND

### I.     Background Facts

The following facts are not in dispute. In late 1999, Captain Thomas Galvin of the SPD Internal Affairs Division asked Brown about a complaint that Brown might be having a relationship with a fifteen-year-old girl he had been seen picking up from school. Captain Galvin concluded that no official misconduct took place, but directed Brown to have no further contact with the girl.

In April 2000, the girl, distraught over a fight with her mother, left home. The next day, she called Brown because she did not feel safe being alone. When Brown picked her up from a local restaurant at approximately 5:00 p.m., she told him about leaving home, and Brown took her to a hotel room. He stayed with her briefly and then went to work at approximately 6:00 p.m., leaving the girl alone in the room. The girl's mother, who had been looking for her, discovered that her daughter was staying at the

hotel room rented in Brown's name. The mother called the New York State Police, and they notified the SPD of Brown's alleged involvement. When asked about the girl by a fellow SPD officer that evening, Brown said that he did not know of her whereabouts, and he denied having rented her a hotel room. At that point, the girl had in fact left the hotel room, but she had not returned home. The next morning she called Brown, and he picked her up from a local shopping mall before taking her to school.

That same morning, Captain Galvin reported to Chief Falge on the status of the missing girl, the investigation, and Brown's involvement. Chief Falge ordered Galvin to suspend Brown with pay pending an investigation. Galvin then spoke with Brown and asked him again if he had any knowledge of the girl's whereabouts, which Brown denied, despite having dropped her off at school. After that conversation, Captain Galvin suspended Brown. The girl was later found safe at school. She gave a statement to the State Police regarding the recent events, including Brown's involvement. The state police proceeded with their investigation. At some point they asked the SPD whether it wanted to assist or participate in the matter. Captain Galvin consulted with Chief Falge, and they declined because the girl lived outside of the city. On May 5, 2000, State Police investigators charged Brown with two misdemeanor offenses: Endangering and Obstructing Governmental Administration.

After plea negotiations Brown pleaded guilty, on June 20, 2000, to one count of Endangering in full satisfaction of all charges. On July 5, 2000, the SPD suspended him without pay pending his termination proceedings. On December 7, 2005, the arbitrator

assigned to review the termination issued an opinion, finding "just cause" existed to terminate Brown effective July 5, 2000.

II.    Procedural History

On October 9, 2001, Brown commenced this lawsuit purporting to assert claims under 42 U.S.C. §§ 1981, 1983, and 1985; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); New York State Human Rights Law ("NYHRL"); and New York State common law.  The § 1983 claims alleged three constitutional violations: a First Amendment retaliation claim and an equal protection "selective treatment" claim based on Brown's complaint about discriminatory practices within the SPD; and a procedural due process claim based on Appellees' depriving Brown of his continued employment with the SPD.  The principal thrust of Brown's complaint is that Appellees discriminated against him by denying him the "benefits and privileges" afforded white police officers within the SPD whose conduct was similar to his.

Appellees moved to dismiss the complaint.  In July 2002, the district court (Scullin, *J.*), dismissed several of Brown's claims, including his §§ 1983 and 1985 claims, for failure to state a claim, and Brown's state-law claims as time-barred.  In June 2005, the district court granted Appellees summary judgment on Brown's Title VII, § 1981, and NYHRL claims because Brown failed to identify a similarly situated police officer whom Appellees treated differently, and thus he could not make out a *prima facie* disparate treatment claim.  The district court also denied Brown's cross-motion for additional

discovery. After the district court denied Brown's motion for reconsideration, Brown appealed.

In *Brown I*, we affirmed the dismissal of the § 1985 claim, but we vacated the dismissal of Brown's § 1981, § 1983, Title VII, NYHRL claims; we also vacated the denial of Brown's cross-motion for additional discovery. *Brown I*, 197 F. App'x at 25-26. With regard to Brown's Title VII, NYHRL, and § 1981 claims, we held that the district court had invaded the factfinding function of the jury by analyzing whether others were in fact similarly situated to Brown. *Id.* at 26. As to Brown's § 1983 claims, we concluded that Brown had pleaded facts sufficient to sustain First Amendment and equal protection violations. *Id.* at 25.

At the same time, we also vacated the district court's dismissal of Brown's procedural due process claim. *Id.* Appellees had argued that Brown had lost his protected property interest in his job when he pleaded guilty to Endangering by operation of New York Public Officers Law § 30(1)(e). *Brown I,* 197 F. App'x at 25. Section 30(1)(e) states that a public office becomes vacant upon the incumbent's conviction of "a crime involving a violation of his oath of office[.]" N.Y. Pub. Off. Law § 30(l)(e). At the time of *Brown I*, the New York Appellate Division, Second Department, had held in *Feola v. Carroll*, 810 N.Y.S.2d 92 (App. Div. 2006), *reversed*, 890 N.E.2d 219 (2008), that the crime of Endangering was not an "oath of office" offense. We held, therefore, that Brown still had a property interest in his job. *Brown I*, 197 F. App'x at 25.

Following our decision in *Brown I*, Brown's Title VII, NYHRL, § 1981 and

§ 1983 claims were revived. The parties conducted further discovery, and Appellees once again moved for summary judgment. Given our holding in *Brown I*, the district court denied Appellees' motion for summary judgment on Brown's Title VII, NYHRL, § 1981, and § 1983 equal protection claims. The district court granted summary judgment to Appellees on Brown's § 1983 procedural due process and First Amendment retaliation claims.[1]

Meanwhile in 2008, the New York Court of Appeals reversed the Second Department's 2006 *Feola* decision and held that Endangering *was* an oath of office offense. *Feola*, 890 N.E.2d at 222. Thus, as the case was proceeding to trial on Brown's remaining claims, the district court granted, in part, Appellees' motion *in limine*, limiting any evidence of adverse employment action to the period between Brown's suspension from the police force and his Endangering conviction. *Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 465 (N.D.N.Y. 2009). Relying on *Feola*, the district court reasoned that any action after Brown's June 2000 conviction could not be an adverse employment action because Brown's employment relationship with the City of Syracuse had ceased as a matter of law once he was convicted. *Id.* The only remaining evidence Brown was allowed to introduce regarding an adverse employment action was his pre-termination

---

[1] Brown has forfeited any challenge to the dismissal of his procedural due process claim by not addressing it in his brief. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) Because we hold now that Brown was terminated as a matter of law on June 20, 2000, and suffered no adverse employment action before that date, his First Amendment claim fails, and we do not address the district court's dismissal of that claim which is based on different grounds.

suspension with pay and other relevant acts by Appellees occurring between April 28, 2000, and June 20, 2000.  *Id.*  The district court declined to impose discovery sanctions. *Id.* at 466.

In September 2009, before trial commenced, Appellees moved for summary judgement on the remaining claims.[2]  The district court dismissed Brown's Title VII, NYHRL, and § 1981 claims, ruling as matter of law that Brown had suffered no adverse employment action.  The court relied on our opinion in *Joseph,* holding that a "[s]uspension with pay pending an investigation into criminal charges is not a 'materially adverse change in terms and conditions of employment.'"  *Brown v. City of Syracuse*, 677 F. Supp. 2d 576, 578 (N.D.N.Y. 2010) (quoting *Joseph*, 465 F.3d at 91).  The court also dismissed Brown's § 1983 selective treatment claim, noting that Brown could have no expectation that the SPD would intervene in the criminal investigation on his behalf.  *Id.* at 580.  Brown appeals from that final judgment.

**DISCUSSION**

I.      The Law of the Case

---

[2] Brown is correct that successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion, *see Campers' World Int'l, Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004), but given the district court's evidentiary ruling on the motion *in limine* and its effect on the factual record, the Appellees had reason to move again for summary judgment.  *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) ("District courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought.").  Thus, the district court did not abuse its discretion in deciding successive summary judgment motions.

Brown argues that the district court violated the mandate rule by impermissibly ruling on issues already decided in *Brown I*. Brown is correct that given our decision in *Brown I*, the law of the case doctrine applies. Under one prong of that doctrine, "[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir. 1983) (internal quotation marks omitted). This "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).

Brown points to at least three "rulings" from *Brown I* that he believes should have controlled the outcome in the district court. First, he argues we decided that a genuine issue of material fact existed as to whether other white officers were in fact similarly situated and, thus, our determination to that effect precludes summary judgment following remand. Brown misreads our earlier decision. The district court followed *Brown I* and, on remand, denied Appellees summary judgment on Brown's Title VII , NYHRL, § 1981 and § 1983 claims. *Brown v. City of Syracuse*, No. 5:01-cv-1523, 2008 WL 5451020, at * 2-3 (N.D.N.Y. Dec. 31, 2008). The district court's subsequent ruling on remand was not based on a finding that other employees were not similarly situated. Instead, it relied on our holding in *Joseph* and the New York Court of Appeals decision in *Feola* to decide that Brown had suffered no adverse employment action when the SPD suspended him

-11-

with pay pending a criminal investigation before Brown had effectively terminated his employment upon pleading guilty to Endangering. *Brown*, 677 F. Supp. 2d at 578-79. *Brown I* did not address, even impliedly, what constitutes an adverse employment action, and the decisions on which the district court relied following our remand were each filed after this case had been remanded.

Second, Brown notes our statement that, "even if Brown had lost his right to employment, it would still be unconstitutional for the City to discriminate against him based on his race or to punish him for speaking out against the City's policies." *Brown I*, 197 F. App'x at 25. He argues that this ruling foreclosed the district court from deciding the merits of his discrimination claims. Brown reads too much into our prior statement. At most, we noted that even if Brown had lost his job for legitimate reasons, a discrimination or retaliation action could still be available.[3] Whereas in *Brown I*, we had reviewed only a motion to dismiss Brown's § 1983 claims under Federal Rule of Civil Procedure 12(b)(6), on remand the district court considered the viability of Brown's § 1983 claims on a summary judgment motion after the record had been developed in discovery. Of equal importance, the district court also considered new arguments based

---

[3] *See, e.g.*, *Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005) (noting that regardless of the state's ability to discharge an employee for discretionary reasons, retaliation because the employee exercised his constitutional rights could still form the basis for a cause of action); *Sagendorf-Teal v. Cnty. of Rensselaer*, 100 F.3d 270, 276 (2d Cir. 1996) (stating that "[a]lthough a probationary employee may usually be discharged with or without cause, she may not be discharged in violation of her First Amendment rights").

on two opinions—*Feola* and *Joseph*—issued after *Brown I*. There is no inconsistency between our statement of hypothetical circumstances in *Brown I* about what could be possible based on the allegations in the complaint and the district court's subsequent determination of what Brown would in fact be able to prove given the evidence and subsequently clarified state of the law.

Third, Brown argues that our statement in *Brown I* that the "§ 30(l)(e) argument is relevant only to [Brown]'s claim that the City violated his procedural due process rights" precludes the district court from considering Appellees' argument that Brown's oath of office conviction changed the evidentiary landscape with respect to his claim for damages based on adverse employment actions. *Brown I*, 197 F. App'x at 25. Brown takes our statement out of context. We did not decide in *Brown I* whether § 30(l)(e) affected our analysis of the evidence regarding an adverse employment action; that issue was not before us. Appellees had not raised it, and the district court only considered Appellees' argument in their motion *in limine* seeking to preclude the admission of certain evidence at trial, which was filed long after remand. Moreover, in *Brown I* we relied on the Second Department's decision in *Feola*, a decision that was later reversed by the New York Court of Appeals. That definitive alteration in controlling state law certainly allowed, in this context, a reexamination of the impact of Brown's guilty plea on the claims he continued

to advance. We hold, therefore, that the district court's decisions on appeal before us do not run afoul of the law of the case as set out in *Brown I*.[4]

II.  *Feola* and Appellees' Motion *in Limine*

Brown argues that the district court erred in its ruling to exclude from evidence any alleged adverse employment action that occurred after June 20, 2000. We review a district court's evidentiary rulings for abuse of discretion, and we "will reverse only if an erroneous ruling affected a party's substantial rights." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005).

Public Officers Law § 30(l)(e) has been repeatedly held to be a self-executing statute that deems vacant any public office upon the officer's conviction of an "oath of office" offense. *See, e.g.*, *Feola*, 890 N.E.2d at 221; *Duffy v. Ward*, 612 N.E.2d 1213, 1214 (N.Y. 1993) (collecting cases). *Feola* made clear that Endangering is an "oath of office" offense as defined by *Duffy v. Ward*, 612 N.E.2d 1213, which held that Public Officers Law § 30(1)(e) applies to misdemeanor offenses for which a facial review of the elements reveals a lack of moral integrity. "Reviewing the elements of the offense

---

[4] The second prong of the law of the case doctrine—that an appellate court should generally follow its own ruling absent cogent or compelling reasons, *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)—is not implicated here because the previous court in *Brown I* did not consider and rule on the majority of the issues we have now considered. Our decision here does not raise any question concerning the validity of our reasoning articulated in our previous summary order. Moreover, the New York Court of Appeals decision in *Feola* that reversed a decision we expressly relied on, along with our own decision in *Joseph,* certainly provide cogent and compelling reasons to reexamine Brown's arguments.

without consideration of the underlying facts, a conviction for endangering the welfare of a child under Penal Law § 260.10(1) conclusively establishes a lack of moral integrity." *Feola*, 890 N.E.2d at 222. It went on to note that the Second Department had misconstrued *Duffy* by examining the alleged conduct rather than the elements of the crime. *Id.*

Under New York law, Brown ceased his employment relationship with the City of Syracuse upon his conviction. *See id.* Thus, the July 2000 suspension without pay and the arbitration proceedings leading to his termination all occurred after Brown had lost his job by operation of law. The district court did not abuse its discretion by ruling that it would preclude evidence that Brown suffered an adverse employment action once his employment ceased. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 557 (7th Cir. 2011) (finding no evidence of adverse employment action for complaints after plaintiff ceased being employed by defendant).[5]

### III. Brown's Title VII, § 1981 and NYHRL Claims

The district court having correctly articulated what evidence it would consider bearing on Brown's claim, we now turn to the district court's grant of summary judgment

---

[5] Brown's argument that the district court improperly gave *Feola* retroactive effect is without merit. First, "a change in the decisional law usually will be applied retrospectively to all cases still in the normal litigating process." *Gurnee v. Aetna Life & Cas. Co.*, 433 N.E.2d 128,130 (N.Y. 1982) (internal quotation marks omitted). Second, a case that "merely construe[s] a statute that had been in effect for a number of years" does "not establish a new principle of law," and thus retroactive application is not an issue. *See id.*(internal quotation marks omitted). Brown's waiver and estoppel arguments are similarly without merit.

in favor of Appellees.  *See Raskin v. Wyatt Co.*, 125 F.3d 55, 67 (2d Cir. 1997).  We review a district court's grant of summary judgment *de novo*.  *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).  Summary judgment is appropriate "only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law."  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).

We analyze Brown's Title VII, § 1981, and NYHRL discrimination claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (Title VII).  *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYHRL); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (§ 1981).  To establish a claim of racial discrimination a claimant "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

Brown's *prima facie* case turns on whether he can prove an adverse employment action.  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. . . .  An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Joseph*, 465 F.3d at 90 (internal quotation marks omitted).  Here, the adverse employment actions Brown complains of are not only his

suspension with regular pay, but also the attendant loss of overtime pay as a result of the suspension.

We held in *Joseph*, 465 F.3d at 91, that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." We reasoned that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Id.* We have noted that our rule is not an absolute one, and that a suspension with pay may, in some circumstances, rise to the level of an adverse employment action.

> The relevant question is therefore whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment. Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies.

*Id.* at 92 n.1.

In our review, under *Joseph,* we must determine if Appellees acted "in a reasonable manner" in suspending Brown with pay. We conclude that they did. Notwithstanding that months before the events at issue Captain Galvin had given Brown a direct order to stop having contact with the minor girl, Brown took the girl—whom he knew to be a runaway—to a hotel room where he left her alone. After being notified of the State Police investigation, Brown repeatedly misled his fellow officers, telling them that he did not rent the room for the girl or know of her whereabouts. The SPD

-17-

regulations provide for suspension of an officer "when it reasonably appears that such action is in the best interest of the department." Reply Declaration of Joseph Bergh Ex. C. Examples of these circumstances include disobeying a direct order or when "there is substantial evidence to believe the accused [officer] has committed an act or omission of such flagrant nature as to render his/her continued presence in [the] department a source of embarrassment." *Id.* There is no contention that Appellees took an action to suspend Brown with pay that SPD regulations did not permit. We cannot say, under these circumstances, that the SPD applied its disciplinary procedures unreasonably, thereby exceeding its authority and materially altering the terms and conditions of Brown's employment.

As the majority did in *Joseph*, 465 F.3d at 91, we reiterate today that a suspension with pay may sometimes rise to the level of an adverse employment action. In the record of this case, we do not have before us a basis for recognizing an exception. Brown argues that his case constitutes such an exception. We now address why it does not.

Taking his cue from our language that a suspension with pay pending an "investigation does not, *without more*, constitute an adverse employment action," *id.* at 91 (emphasis added), Brown argues that his loss of overtime pay should be sufficient to clear the bar set by *Joseph*. As pointed out by the district court, Brown's loss of overtime pay was a direct *result* of his suspension with pay, not an additional action taken by his employer. We agree. It would be absurd if the rule in *Joseph* turned on whether a plaintiff has in the past earned overtime pay.

-18-

Brown also advances the following argument, which we understand is a further effort to bypass *Joseph* and also to articulate a basis for his equal protection claim: because other white officers accused of conduct worse than his were allowed to stay on the job, his suspension with pay was unreasonable (*i.e.*, adverse) and the SPD violated his equal protection rights by singling him out. Brown, however, offers no proof of circumstances when a white officer in the center of a missing persons investigation engaged in behavior comparable to his and was not suspended. The evidentiary record being what it is, under *Joseph*, Brown cannot prove that his suspension with pay constituted an adverse employment action. His Title VII, § 1981, and NYHRL discrimination claims, therefore, fail as a matter of law.

IV.     Brown's Equal Protection Claim

In addition to suggesting that the alleged unequal treatment constitutes an exception to our holding in *Joseph*, Brown specifically argues that the Appellees did not afford him equal protection of the law when they refused to extend him the "benefits and privileges" white officers receive in internal disciplinary proceedings and in prosecutions and dispositions of criminal charges. Brown contends that he should not have been investigated in the first place and, in any event, the SPD should have become involved in his investigation and worked with the State Police and District Attorney to achieve a more favorable outcome for him.

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'" *Diesel*, 232 F.3d at

103 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

We have recognized a selective enforcement claim where a plaintiff proves that "(1) the

[plaintiff], compared with others similarly situated, was selectively treated; and (2) that

such selective treatment was based on impermissible considerations such as race, religion,

intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

intent to injure a person." *Id.* at 103 (internal quotation marks omitted; alteration in

original). Despite this broad language, we have recognized that the injury of which

Brown complains is not actionable. We held in *Diesel* that "civil damages are not

available by reason of a police officer's refusal to turn a preferentially blind eye toward

another's serious infraction." *Id.* at 104. At the same time, we posited that a "vigorous"

investigation motivated by plaintiff's protected speech, race, or sex that went beyond how

the authorities treat members of the general public could form the basis of an action. *See

id.* at 104. Claims that police officers, with discriminatory motive, investigated a fellow

officer for alleged administrative violations could also survive. *Id.* Our decision in

*Leather v. Ten Eyck*, 2 F. App'x 145, 150 (2d Cir. 2001) (summary order), while not

precedential, provides a good example of the type of conduct from which an equal

protection claim may still arise. It also illustrates why Brown's claim is without merit.

The plaintiff in *Leather* had voiced unpopular opinions within the sheriff's office.

After this happened, three officers kept him under surveillance while he dined with his

wife; they watched him drink one or more alcoholic beverages and then pulled him over

and arrested him for driving while intoxicated. *Id.* at 146. The plaintiff brought a

retaliation lawsuit against the officers who had surveilled and arrested him. The jury found that the defendants watched and arrested the plaintiff in a calculated move to punish him for having spoken out on an important topic. We affirmed the verdict and judgment. *Id.* at 150. In contrast, the plaintiff in *Diesel* was found passed out and bloodied in a police vehicle on the side of the road and was believed to be intoxicated. *Diesel*, 232 F.3d at 97-99. He had previously been involved in an internal affairs investigation, and he alleged that his fellow officers failed to ignore or conceal his drunken driving as retaliation for his protected activity. *Id.* at 96. We disagreed that he was entitled to "a blue wall of silence, behind which he expected his fellow officers to cover up his misconduct as he allege[d] is done for other officers." *Id.* at 104.

The important distinction between *Diesel* and *Leather* is that the plaintiff in *Leather* "was discriminatorily sought out and investigated" (rather than being "caught by non-discriminatory means" and then "denied the benefit of 'professional courtesy.'") *Leather*, 2 F. App'x at 150. Here, it is uncontroverted that there was no discrimination at play in the initiation of the investigation involving Brown. He was identified and ultimately caught by non-discriminatory means, namely, the girl's mother's complaint to the State Police and the girl's own statement that Brown had in fact rented her the hotel room. The allegations against Brown were brought to the investigating and commanding officers' attention not through some selective process or "vendetta" of racist officers. We cannot find constitutional injury where the officers acted reasonably in suspending him with pay pending the criminal investigation. *See Diesel*, 232 F.3d at 104. Nor is there

-21-

constitutional harm when the SPD merely refused to intervene on Brown's behalf in the State Police criminal investigation. Moreover, to recognize a constitutional violation here based on a failure to extend a "professional courtesy" would create bizarre incentives encouraging officers to meddle with criminal investigations of a fellow officer's misconduct in order to avoid being subject to liability. This "would stand the Equal Protection Clause on its head." *Id.* Accordingly, even if Brown's allegations were true, they do not constitute a cognizable equal protection claim.

V.      Discovery Sanctions

Brown argues Appellees' failure to produce relevant discovery warranted sanctions. In its decision on the 2009 motion *in limine*, the district court stated that sanctions would not be imposed because discovery had been contentious throughout the lengthy litigation, with both sides demonstrating antagonism rather than simple adversarial positions. *Brown*, 648 F. Supp. 2d at 466. We have carefully reviewed Brown's arguments with respect to the discovery disputes and determined that the district court did not abuse its discretion denying sanctions.

**CONCLUSION**

We have considered Brown's other arguments, and we find them without merit. For the foregoing reasons, we AFFIRM the judgment of the district court granting summary judgment in favor of Appellees.