16-1452-cv
*Diggs v. Niagara Mohawk Power Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of May, two thousand seventeen.

Present:
>    AMALYA L. KEARSE,
>    DEBRA ANN LIVINGSTON,
>    RAYMOND J. LOHIER, JR.,
>        *Circuit Judges.*

---

MICHAEL J. DIGGS,

>        *Plaintiff-Appellant*,

>    v.                                                                  16-1452

NIAGARA MOHAWK POWER CORPORATION,

>        *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | PHILLIP G. STECK, Cooper Erving & Savage LLP, Albany, NY |
| For Defendant-Appellee: | ROBERT A. LABERGE, Kseniya Premo (on the brief), Bond, Schoeneck & King, PLLC, Syracuse, NY |

1

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Michael J. Diggs appeals from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*), entered on April 14, 2016, granting summary judgment to the Defendant-Appellee on *inter alia* Diggs's claim of racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* We assume the parties' familiarity with the facts, procedural history, and specification of the issues on appeal, some of which we discuss briefly below.

## I. Background[1]

Diggs, an African-American male, worked at Niagara Mohawk Power Corporation ("Niagara Mohawk") as a gas mechanic. On December 20, 2012, Diggs left his jobsite in Albany, New York, in a Niagara Mohawk backhoe. He drove to his personal garage, where he used the backhoe to try and break up a tree stump in his yard. That afternoon, Diggs returned the backhoe to a Niagara Mohawk facility in Glenmont, where his personal vehicle was parked. Niagara Mohawk received a customer complaint that day alleging that Diggs was at his personal property with a Niagara Mohawk backhoe during the workday.

As a result of the complaint, Scott Ackermann, a Niagara Mohawk Gas Operations manager, convened an investigatory meeting that same day, attended by Diggs and Diggs's union representative. When questioned, Diggs stated that he used the backhoe as transportation to and from his home, but failed to "elaborate on the fact that [he] used the backhoe at [his] garage," and denied that he used the equipment for "personal gain." J.A. 194, 218. The complaining customer then submitted photographs of Diggs operating the backhoe in the yard of

---

[1] The following facts are drawn from the summary judgment record and, unless otherwise noted, are undisputed.

his garage. Niagara Mohawk conducted a second investigatory meeting on January 8, 2013, with Diggs and his union representative, Ackermann, Labor Relations Manager Frank DeMauro, and Gas Operations Director Bryan Buck. DeMauro asked Diggs what he was doing with the backhoe. Diggs repeated his story that he had used the backhoe for transportation purposes only. However, once confronted with the complaining customer's photographs, Diggs acknowledged using the backhoe in his yard to try to remove a tree stump. DeMauro then informed Diggs that he was terminated for using Niagara Mohawk equipment for personal reasons and lying about his misconduct during the company's investigatory meetings, in violation of the company's standards of conduct.

Diggs then challenged his termination through a grievance and a two-day hearing before a neutral arbitrator appointed by the American Arbitration Association, pursuant to the collective bargaining agreement ("CBA") between Niagara Mohawk and Diggs's union. Diggs claimed that he was treated more severely than four other Niagara Mohawk employees who committed similar or more egregious conduct: Robert Bain, Mark Walker, Roger Contento, and Curtis Bailey. After reviewing the evidence, the arbitrator upheld Diggs's termination. He concluded that Diggs was terminated for personal use of Niagara Mohawk property and for failing to be truthful during the investigatory meetings. Diggs's "dishonesty and evasive attitude at investigatory meetings with management distinguishe[d] his case from those of Bain, Walker, Contento, or Bailey." J.A. 151.

Diggs brought suit in district court on March 6, 2014. Niagara Mohawk moved for summary judgment. The district court granted Niagara Mohawk summary judgment, reasoning

3

that Diggs failed to show that the circumstances surrounding his termination gave rise to an inference of racial discrimination.[2]

## II.     Discussion

Discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination.    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).    To satisfy this initial burden, the plaintiff "'must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"    *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).    "A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action."    *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted).    If the defendant comes forward with a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."    *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

A plaintiff may raise an inference of discrimination by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.    *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.

---

[2] Diggs limits his appeal to his race discrimination claim, though he also brought an age discrimination claim in the district court.

2000). To raise an inference of discrimination by showing that he was subjected to disparate treatment, the plaintiff must establish that he was "'similarly situated in all material respects'" to the individuals with whom he seeks to compare himself. *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). The court must consider whether the plaintiff and his comparators were "subject to the same workplace standards" and "whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40.

As we have said before, "a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee." *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). When the employee elects to proceed to arbitration and the decision of an independent arbitrator who has the final power to discipline or discharge the employee "follows an evidentiary hearing and is based on substantial evidence," however, the arbitration decision attenuates the plaintiff's "proof of the requisite causal link" between a discriminatory motive and the adverse employment action, so that "the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the [arbitrator's] decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." *Id.* In other words, the arbitrator's decision is "highly probative of the absence of discriminatory intent in [the] termination." *Id.* "We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).

On appeal, Diggs argues that he put forth sufficient evidence for a reasonable jury to infer (1) that he was not dishonest during the investigative proceedings, or alternatively, (2) that his comparators were dishonest during the investigative proceedings. First, he states that he never

denied that he used the backhoe to try and remove a tree stump. It is true that Diggs never explicitly stated that he did not use the backhoe to try and remove a tree stump.[3] However, it is undisputed that, despite a series of questions about what he did with the backhoe, Diggs contended that he had used the backhoe for transportation only and did not tell the company representatives that he used the backhoe to try and remove the stump until they presented the photographs to him. Second, Diggs points to the fact that the company convened two meetings about Contento's misconduct as evidence that Contento was similarly dishonest during those proceedings. But this fact, standing alone, does not constitute strong evidence that Contento or any of Diggs's alleged comparators were dishonest during their investigations. Indeed, Diggs points to no record evidence that Bain, Walker, and Contento lied about their conduct during the investigatory meetings and further concedes that there is no evidence that Bailey was dishonest. Diggs's speculation is insufficient to raise a genuine issue of material fact. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). We agree with the district court that in these circumstances, Diggs's showing falls short of the "strong evidence" required to determine that the arbitrator's decision was wrong as a matter of fact. *See Collins*, 305 F.3d at 119. Based on this record, a reasonable jury could not conclude that Diggs was similarly situated to his comparators. Thus, the court properly granted summary judgment to Niagara Mohawk on Diggs's discrimination claim.

---

[3] At the first investigative meeting, Diggs denied that he had used the backhoe for personal gain. Diggs later argued that he misunderstood personal gain to mean monetary gain.

\*     \*     \*

We have considered Diggs's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk