22-792-cv
*Carr v. New York City Transit Authority*

# United States Court of Appeals for the Second Circuit

---

August Term 2022
No. 22-792-cv

---

JENNIFER BERKELEY CARR,
*Plaintiff-Appellant,*

v.

NEW YORK CITY TRANSIT AUTHORITY,
MARVA BROWN, AND DAVID CHAN,
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

ARGUED: MAY 18, 2023
DECIDED: AUGUST 7, 2023

Before: POOLER, PARKER, AND NATHAN, *Circuit Judges.*

Plaintiff-Appellant Jennifer Berkeley Carr appeals from a judgment of the United States District Court for the Southern District of New York (Broderick, *J.*) dismissing her claims of age, race, and gender discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

On appeal Carr asserts that the district court applied an incorrect legal standard to her retaliation claim and that it erroneously concluded that she had failed to demonstrate that Defendants-Appellees' race neutral explanations for not selecting her for two internal promotions were pretextual. First, we hold that Carr has not demonstrated that Defendants-Appellees' explanations for her non-promotions were pretextual. Second, we hold that although the district court applied an incorrect standard to her retaliatory hostile work environment claim, Carr has nevertheless failed to make out a prima facie case of retaliation and did not demonstrate that her employer's non-retaliatory explanations were pretextual. We therefore **AFFIRM** the judgment of the district court.

---

GREGORY G. SMITH, (Janet J. Lennon, *on the brief*), Law Office of Gregory Smith, Brooklyn, NY, *for Plaintiff-Appellant*.

MARIEL A. THOMPSON, Executive Agency Counsel New York City Transit Authority, New York, NY, *for Defendants-Appellees*.

---

2

PARKER, *Circuit Judge:*

Jennifer Berkeley Carr appeals from a judgment of the United States District Court for the Southern District of New York (Broderick, *J.*). The district court granted the motion of the New York City Transit Authority, Marva Brown, and David Chan (collectively, "NYCTA") for summary judgment and dismissed Carr's claims of age, race, and gender discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

On appeal, Carr contends that the district court applied an incorrect legal standard to her retaliation claim and that it erroneously concluded that she had failed to demonstrate that the NYCTA's race neutral explanations for its failure to promote her were pretextual. First, we hold that Carr has not demonstrated that the NYCTA's explanations for her two non-promotions were pretextual. Next, we conclude that although the district court applied an incorrect standard to her retaliatory hostile work environment claim, Carr has nevertheless failed to make out a prima facie case of retaliation or demonstrate that the NYCTA's explanations for its actions were pretextual. We therefore **AFFIRM** the judgment of the district court.

## BACKGROUND

Carr, an "African-American female of Caribbean descent" born in 1955, worked for the New York City Transit Authority (the "Transit Authority") from 2000 to 2022. Joint App'x at 1103 ¶ 4. Carr holds a bachelor's degree in economics and a master's degree in public administration. During the relevant period, Carr worked as a director in the Transit Authority's Capital Programs Department with the title Director of Telecommunications and Systems, Capital Programs.

3

Capital Programs was led by Appellee Marva Brown, also an "African-American female of Caribbean descent." Joint App'x at 1104 ¶ 5. In 2013 and 2014, Carr applied for two senior director positions in the department, but after an application process Brown ultimately selected a younger non-Black man to fill each role. The application process for both positions included an interview with a panel of three Transit Authority employees. The first promotion that Carr applied for was to the position of Senior Director, Program Management and Oversight. That promotion went to Joseph DiLorenzo, a white man in his early 50s who had worked at the Transit Authority since 1989 and had a technical background in architecture. The second promotion that she applied for was to the position of Senior Director, Program Management & Analysis. That promotion was given to David Chan. Chan, a 55-year-old Asian man, had worked at the Transit Authority since 1987 and had a background in electrical engineering and business administration.

Carr does not allege that either man promoted was unqualified. It is uncontested that both men had worked at the Transit Authority longer than Carr and had technical backgrounds that Carr lacked. What is more, one of the interviewers for the second promotion testified that Chan interviewed particularly well, and that Carr was openly hostile toward Brown in her interview. After receiving the promotion, Chan became Carr's supervisor.

In September 2014, after failing to receive the two promotions she had sought, Carr filed a complaint with the Transit Authority's Equal Employment Opportunity Office. In May 2015, she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission. After receiving a right-to-sue letter, Carr initiated this lawsuit in December 2016. In her amended complaint, she alleged that the NYCTA discriminated against her on the basis of

4

her age, gender, and race by denying her the promotions and that it discriminated against her by creating a hostile work environment based on her age.[1] 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981. Carr also alleged that the NYCTA violated the ADEA, Title VII, and Section 1981 by creating a hostile work environment in retaliation for her complaints of discrimination. 29 U.S.C. § 626 *et seq.*; 42 U.S.C. § 2000e-3; 42 U.S.C. § 1981.

Carr alleges that after she began to report discrimination in September 2014, her relationships with her supervisors and her performance evaluations deteriorated, which she attributes to retaliation. Among other things, Carr asserts that Chan was disrespectful and hostile to her in emails; that Chan assigned her increased job responsibilities including responsibility for Elevator and Escalator Communications, compiling a new Employee Training Manual, and completing various other reports; that Chan threatened to cancel her vacation time if she did not complete her projects; and that analysts who worked under her were removed.

Despite these conflicts, Carr received "Good" performance reviews in 2014 and 2015, a decline from her previous "Excellent" ratings, but a rating that did not affect her compensation or position. In both her 2016 and 2017 annual reviews, however, Carr received a "Needs Improvement" rating that prevented her from receiving a wage increase. Carr retired in 2022. She contends that her mistreatment, including the increased workload and the negative evaluations, was in retaliation to her complaints of discrimination. In

---

[1] Carr does not challenge the dismissal of her standalone claim for a hostile work environment under the ADEA. We therefore do not address that claim. *See Jackson v. Fed. Express*, 766 F.3d 189, 194–95 (2d Cir. 2014). To the extent Carr also intended to challenge the denial of her motion for Judge Vernon S. Broderick's recusal, she waived this issue by failing to brief it. *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

5

contrast, Chan contended in summary judgment proceedings that Carr was treated like any other employee and that the negative evaluations were appropriate because of problems with the completeness and timeliness of her work.

The NYCTA moved for summary judgment and the district court granted it. The district court first held that although Carr had made out a prima facie case of a discriminatory non-promotion, she had failed to demonstrate that the reasons the NYCTA provided for promoting DiLorenzo and Chan were pretextual. *Carr v. N.Y.C. Transit Auth.*, No. 16-cv-9957 (VSB), 2022 WL 824367, at *9–12 (S.D.N.Y. Mar. 18, 2022). The district court noted that Carr had failed to identify any inconsistencies in the hiring criteria and concluded that she had relied on "speculation alone" to support her discrimination claim. *Id.* at *12 (quotation marks omitted).

The district court then analyzed Carr's retaliation claims and found that she had not made out a prima facie case because she failed to provide admissible evidence tending to show the alleged retaliatory actions, such as the "Needs Improvement" performance reviews, were caused by her complaints of discrimination or that the retaliation against her was "sufficiently severe or pervasive to alter the conditions of [her] employment" and therefore she could not make out a prima facie case for a retaliatory hostile work environment. *Id.* at *14–15 (quotation marks omitted).

Finally, the district court concluded that, even assuming that Carr had made out a prima facie case, she had failed to demonstrate that the NYCTA's legitimate, non-discriminatory reasons for the alleged retaliatory actions were pretextual. *Id.* at *15. The district court concluded that "[t]here is ample record evidence to support Defendants' stated belief that Plaintiff was not doing her job adequately and was unpleasant and difficult to work with, thus

6

warranting the negative performance reviews" and that Carr had put forward no evidence of pretext. *Id.* Accordingly, the district court granted the NYCTA's motion for summary judgment. Carr then appealed to this Court.

## DISCUSSION

We review the district court's grant of summary judgment de novo. *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020). "In evaluating such motions, the district court must resolve any doubts and ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Id.* "Summary judgment is required if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (internal quotation marks omitted).

### I. Discrimination Claims

Carr asserts that age, race, and gender discrimination motivated the decision not to select her for senior director positions. Discrimination claims under Title VII, the ADEA, and Section 1981 are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under this familiar framework, "once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee. If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination." *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86–87 (2d Cir. 2022) (cleaned up).

7

The plaintiff bears "the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

The district court concluded, and the parties do not dispute, that Carr established a prima facie case of discrimination on the basis of race, sex, and age and that the defendants proffered a non-discriminatory reason for not promoting her – that the two younger men who Brown hired instead of Carr had worked at the Transit Authority longer, had technical backgrounds she lacked, and interviewed better. *See Carr*, 2022 WL 824367, at *9–10. The dispute is over the third step: pretext.

As proof of pretext, Carr points to perceived inconsistencies in the hiring criteria and changes to the hiring process, such as that the original job descriptions did not specify a technical background was required and the panel of interviewers changed between the first and second openings she applied for. The district court concluded that no reasonable juror could find that the reasons the NYCTA provided for selecting the other candidates for promotions were pretextual. The district court observed that there was nothing inconsistent about the NYCTA's explanations for why DiLorenzo and Chan were promoted over Carr. *Id.* at *12.

We agree. The NYCTA adduced evidence that DiLorenzo or Chan were equally, if not more, qualified for the positions than Carr, and there is no allegation that any impermissible promotion criteria were used. *See Burdine*, 450 U.S. at 259 ("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."). While "entirely ignor[ing]" explicit hiring criteria or an "unprecedented" departure from an employer's established hiring practice can show pretext, Carr's allegations regarding minor variations in the hiring process and the

8

emphasis on the other candidates' technical backgrounds are not the sorts of "departures from procedural regularity" that could allow a jury to infer pretext. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 310, 314 (2d Cir. 1997) (quotation omitted). Where, as here, "an employer's explanation, offered in clear and specific terms, is reasonably attributable to an honest . . . evaluation of qualifications, no inference of discrimination can be drawn." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (cleaned up). We therefore affirm the district court's grant of summary judgment on Carr's discrimination claim.

## II.   Retaliation Claims

Carr also claims that she was retaliated against for complaining that Brown's promotion decisions were discriminatory. Although retaliation claims under Title VII are governed by 42 U.S.C. § 2000e-3, rather than § 2000e-2, which governs discrimination claims, the *McDonnell Douglas* framework applies to retaliation claims, whether brought under the ADEA, Title VII, or Section 1981. *See Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42–43 (2d Cir. 2019); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). The specific requirements for a prima facie case of retaliation were set forth in *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006) ("*Burlington Northern*"). *See* p. 13 *infra.* As in the discrimination context, a defendant may rebut a prima facie showing of retaliation by providing a legitimate, non-retaliatory reason for the allegedly retaliatory action. *See Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). Then "the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (cleaned up).

In *Burlington Northern*, the Supreme Court considered the level of harm required to establish a claim of retaliation. The Court held that no matter the theory of retaliation, to satisfy the third element of the prima facie case a plaintiff need only show that the employer's retaliatory actions, considered either singularly or in the aggregate, were "materially adverse." *Id.* at 68. Given that standard, we hold that no reasonable juror could conclude that Carr has suffered material adverse retaliatory actions.

In *Burlington Northern*, a railroad employee, White, claimed that she was retaliated against after successfully raising gender discrimination concerns. *Burlington Northern*, 548 U.S. at 58. The alleged retaliation consisted of, among other things, White's reassignment from forklift duty to "track laborer tasks," which were more arduous. *Id.* The Supreme Court granted certiorari to resolve a circuit split regarding "whether the challenged action has to be employment or workplace related and about how harmful that action must be to constitute retaliation." *Id.* at 60–61.

*Burlington Northern* focused on the difference between two sections of Title VII: its antidiscrimination provision, 42 U.S.C. § 2000e-2, and its antiretaliation provision, 42 U.S.C. § 2000e-3. Title VII's antidiscrimination provision makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The antiretaliation provision bars actions that "discriminate against" an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The Court noted that Title VII's antiretaliation

10

provision prohibits discrimination more broadly than its substantive antidiscrimination provision, which prohibits only actions affecting certain enumerated aspects of employment, and, consequently, held that the two provisions were not coterminous and should be interpreted differently. *Burlington Northern*, 548 U.S. at 62–63 (citing 42 U.S.C. § 2000e-2(a)). The Court went on to hold that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 67.

The Court then defined the level of harm necessary for an alleged retaliatory action to support a prima facie case of retaliation. It held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). The Court rejected the reasoning of some circuits, which required that a retaliation plaintiff show a "materially adverse change in the terms and conditions of employment," just like in the substantive discrimination context. *Id.* at 60 (internal quotation marks omitted). However, the Court emphasized that to be "materially adverse," an action must cause more than "trivial harms" because "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. Harms such as these were not actionable, it held, because they would not deter reasonable employees from making complaints of discrimination. *Id.* Applying this holding to the retaliation alleged by White, the Court held that her reassignment was a materially adverse action. *Id.* at 70–71.

As mentioned above, *Burlington Northern* stands for the proposition that the definition of "adverse action" in the Title VII

antiretaliation context is broader than in the antidiscrimination context. Consequently, there are adverse actions that would suffice to make out a prima facie case for retaliation because they are "materially adverse" but would be insufficient to make out a prima facie case for discrimination because they did not alter the terms and conditions of employment. *Burlington Northern* therefore left us with a single standard that applies to all retaliation claims: a plaintiff need only show that the retaliatory actions she was subjected to were materially adverse, meaning that the actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68.

Following *Burlington Northern,* this Court noted that "the harm element of a retaliation claim is not to be analyzed in the same way as the harm from an alleged substantive act of discrimination," *Davis-Garett*, 921 F.3d at 43, and that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment, no longer represent the state of the law," *Hicks*, 593 F.3d at 165 (internal citations omitted). Recently, the Fourth Circuit correctly applied *Burlington Northern* to a retaliatory hostile work environment claim in *Laurent-Workman v. Wormuth*, 54 F.4th 201 (4th Cir. 2022). It held that to make out a prima facie case of a retaliatory hostile work environment, a plaintiff must allege that the retaliatory actions would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Laurent-Workman*, 54 F.4th at 218 (quoting *Burlington Northern*, 548 U.S. at 68). It then concluded that "the consistent (even if not constant) conduct Laurent-Workman alleges plausibly qualifies as materially adverse" and that she "has adequately pled that a reasonable employee may have been dissuaded from following through with her complaints." *Id.* We find this decision persuasive because it follows the standard set forth in

12

*Burlington Northern* and aligns the standard for retaliatory hostile work environment claims with the broader retaliation standard.

Applying *Burlington Northern*'s unified standard, we hold that to satisfy the third element of a prima facie retaliation case, a plaintiff need only show that the allegedly retaliatory actions, taken either singularly or in the aggregate, were "materially adverse." A claim of "retaliatory hostile work environment" must therefore be treated identically to a claim that an employer took multiple retaliatory actions that were, in the aggregate, "materially adverse."

Accordingly, we hold that to establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.[2] As we have noted, under *Burlington Northern*, a "materially adverse" action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (quotation marks omitted).

On appeal, Carr primarily argues that she was subjected to a retaliatory hostile work environment, and that the district court erred by using the incorrect standard in concluding that the NYCTA's treatment of her, in the aggregate, was not materially adverse. The NYCTA counters that Carr must make the same showing as she would to make out a prima facie case in a discriminatory hostile work environment claim, *i.e.*, that she must show the retaliatory actions were sufficiently severe and pervasive that they altered the terms and

_____

[2] Although it is not relevant to this case, this definition acknowledges *Burlington Northern*'s holding that one can be retaliated against by actions taken outside of the workplace. 548 U.S. at 67.

13

conditions of her employment. *See Williams v. N.Y. City Hous. Auth.*, 61 F.4th 55, 68–69 (2d Cir. 2023) (setting out the standard in a discriminatory hostile work environment case). The district court appeared to accept the NYCTA's argument and applied the standalone hostile work environment standard to Carr's claim. *Carr*, 2022 WL 824367, at *14. As explained above, we disagree.

Although the NYCTA's test for a retaliatory hostile work environment was not fully consistent with *Burlington Northern*, we nevertheless conclude that Carr failed to make out a prima facie case because the allegedly retaliatory actions were not materially adverse. Carr argues that her diminishing performance ratings, not having analysts reporting directly to her, being assigned additional projects, and Chan's hostile tone in emails, together constitute unlawful retaliation. However, the alleged retaliatory actions were the result of generally applicable workplace policies and Carr has not adduced evidence that these policies were applied to her and not others. We have held that absent allegations of more direct hostile conduct, a reasonable employee would not be dissuaded from taking protected action simply because they are subject to the same policies as other employees. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568, 570-71 (2d Cir. 2011). We conclude that these complaints, even when taken in the aggregate, would not dissuade a reasonable employee from lodging a complaint and therefore, they were not materially adverse.

Our Court,[3] and district courts in this Circuit,[4] have on occasion failed to apply the *Burlington Northern* standard faithfully. As noted, when analyzing a retaliation claim, the sole inquiry regarding the

[3] *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018) (applying, without analysis, the "severe and pervasive" standard from a discriminatory hostile work environment claim to a retaliatory hostile work environment claim).

[4] *Compare Stevenson v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 1:21-cv-355 (GWC), 2022 WL 179768, at *6 (W.D.N.Y. Jan. 20, 2022) ("alleging a retaliatory hostile environment is an *alternative* way to establish that element of a retaliation claim. . . . Here, Plaintiffs have alleged multiple acts . . . that, when considered together, plausibly indicate a retaliatory hostile environment that constitutes adverse employment action.") (internal quotation marks omitted), *with Bacchus v. N.Y. City Dep't of Educ.*, 137 F. Supp. 3d 214, 244 (E.D.N.Y. 2015) ("To establish a claim for retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct.") (quotation marks omitted), *Villar v. City of New York*, 135 F. Supp. 3d 105, 137 (S.D.N.Y. 2015) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."), *Senior v. Conn. Workers' Comp. Comm'n, Third Dist.*, No. 3:17-cv-1205 (JBA), 2018 WL 4288643, at *4 (D. Conn. Sept. 7, 2018) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims"), *and Colton v. N.Y. Div. of State Police*, No. 5:14-cv-00801 (TJM), 2017 WL 5508911, at *13 (N.D.N.Y. Feb. 8, 2017) ("If a plaintiff shows a causal connection between the protected activity and the adverse conduct, the same 'severe or pervasive' standard [as applies in a gender-based hostile work environment claim] applies to a retaliatory hostile work environment claim.") (quotation marks omitted).

15

third element of the prima facie case is whether the allegedly retaliatory actions were materially adverse. Even if a plaintiff labels her retaliation claim as a "retaliatory hostile work environment" claim, courts should not consider whether the allegedly retaliatory actions meet the higher "severe and pervasive" standard. All that is relevant is whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination.

To be sure, Carr's "Needs Improvement" performance reviews in 2016 and 2017, which made her ineligible for raises, constitute materially adverse actions on their own. But even assuming *arguendo* that Carr could establish that her complaints of discrimination caused the poor performance evaluations, the district court correctly concluded that Carr's claim would fail at the third step of the *McDonnell Douglas* burden-shifting framework because she cannot establish pretext. *Carr*, 2022 WL 824367, at *15.

The NYCTA's evidence supporting summary judgment established that Carr received negative performance evaluations because she was not adequately or timely completing her duties and had become increasingly challenging to work with. Carr has not rebutted this showing with evidence demonstrating that the reasons the NYCTA provided for the poor performance reviews were pretextual. Instead, she argues that the performance reviews must have been retaliatory due to their temporal proximity to her complaints. But she offers nothing more to establish causation and we have been clear that temporal proximity "alone is insufficient to defeat summary judgment at the pretext stage." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Absent other evidence, no factfinder could reasonably determine that Carr's protected activities

16

were the but-for cause of her negative evaluations. We therefore affirm the district court's grant of summary judgment on this claim.

### III.     Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.