*Bassi v. New York Medical College, et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of August, two thousand twenty-four.

PRESENT:
        **DENNY CHIN,**
        **MICHAEL H. PARK,**
        **BETH ROBINSON,**
           *Circuit Judges.*

---

**Harmeetinder Bassi, M.D.,**

        *Plaintiff-Appellant*,

        v.                          **23-278**

**New York Medical College, Phelps Memorial Hospital Association, Northwell Health, Inc., Open Door Family Medical Center, Inc., Shantie Harkisoon, M.D.,**

        *Defendants-Appellees.*[*]

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | JOSHUA PARKHURST, Law Offices of Joshua Parkhurst, New York, NY. |
| **FOR DEFENDANT-APPELLEE: NEW YORK MEDICAL COLLEGE** | MARIA L. PASSARELLI, Cozen O'Connor, Pittsburgh, PA. |

---

[*] The Clerk of Court is respectfully directed to update the caption.

FOR DEFENDANTS-APPELLEES: JOHN KEIL, Collazo & Keil, LLP,
PHELPS MEMORIAL HOSPITAL ASSOCIATION, New York, NY.
NORTHWELL HEALTH, INC.,
SHANTIE HARKISOON, M.D.

FOR DEFENDANT-APPELLEE: POONAM SETHI (Greg Riolo, *on the*
OPEN DOOR FAMILY MEDICAL CENTER, INC. *brief*), Jackson Lewis P.C.,
White Plains, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Harmeetinder Bassi, M.D., appeals from the district court's grant of summary judgment to Defendants-Appellees in his employment discrimination lawsuit. Plaintiff is a practicing Sikh; a tenet of his faith is that he keep his hair covered when outside the home. He alleges that he was constructively terminated from a medical residency program run by Defendants after he filed a complaint about derogatory comments about his religious practices, in violation of federal, state, and local employment laws. He also alleged related claims for breach of contract and tortious interference. We assume the parties' familiarity with the underlying facts, the procedural history of this case, and the issues on appeal.

Plaintiff began a family medicine residency program (the "Program") in the summer of 2014 following his graduation from medical school. The Program was the result of cooperation among Defendants-Appellees New York Medical College ("NYMC"), Phelps Memorial Hospital, and Open Door Family Medical Center. Phelps employed the residents and provided them with hospital rotations and most of their faculty. Open Door provided outpatient clinical experience—a vital part of a family-medicine program. And NYMC ensured that the Program complied with

2

various accreditation standards. Defendant-Appellee Shantie Harkisoon, M.D., served as the Program's director.

In September 2015, a few months into Plaintiff's second year, he was placed on an academic action plan because of "concerns regarding [his] academic progress." JA:200-01. After continued deficiencies, Plaintiff was placed on academic remediation that November. He was warned that unless he made substantial progress in his training, he would not be promoted to the third year of residency. JA:199.

Halfway through his second year, in January 2016, Plaintiff filed a complaint with both Phelps's and Open Door's human resources departments alleging racial and religious discrimination. Sometime during his second year, Harkisoon remarked to another faculty member that Plaintiff looked unprofessional while wearing his patka. A patka is a tight-fitting cloth headcovering worn by Sikh men beneath or in lieu of a more-familiar turban. Plaintiff normally wore a turban, but he wore a patka when his turban was impractical—usually during surgeries, when delivering babies, or when on call during a night-shift. Harkisoon asked one of the Program's chief residents to relay concerns about the patka to Plaintiff. Believing the comments to be discriminatory, Plaintiff filed his complaint. A few days later at a meeting about the complaint, Harkisoon apologized for the misunderstanding and clarified that Plaintiff was free to practice his faith in whatever manner he wished. Plaintiff concedes that no comments were made about his patka or other religious practices following that meeting.

Plaintiff's clinical performance did not improve. In February 2016, he was advised that the Clinical Competency Committee ("CCC") responsible for supervising and evaluating residents remained concerned with his progress. His efforts to comply with his academic action plan had not succeeded, so his remediation was being continued until April, when the CCC would review

3

Plaintiff's progress once again. That review did not go well for Plaintiff. On June 3, the CCC met once again and concluded that due to "grave concerns . . . regarding [his] ability to practice patient care competently under indirect supervision in the ambulatory care setting," Plaintiff would not be promoted to his third year of residency and that if he failed to remedy his deficiencies during six months of probation, he would be terminated from the Program. JA:206. Plaintiff appealed that decision to a committee of disinterested physicians. The Appeals Committee upheld the CCC's decision to deny Plaintiff a promotion but recommended that Plaintiff be permitted to repeat his second year rather than face termination in December 2016. JA:710. Plaintiff's probation thus was extended from December 2016 to June 2017. JA:208.

Plaintiff's clinical performance did not improve in 2017. *See, e.g.*, JA:716; JA:719; JA:723; JA:727. In March, his summative evaluation concluded that, "[d]espite maximum resources to support learning and training" such as "1:1 precepting for every session" and "multiple recorded patient encounters for review," he "did not meet the required level of competency for promotion." JA:738. The CCC again decided to terminate Plaintiff's position within the Program, and Plaintiff again appealed. JA:740-42. The Appeals Committee agreed that Plaintiff had "demonstrated sufficient competency in numerous venues so as to countervail the issues which previously arose," and it recommended that Plaintiff "should be reinstated and allowed to complete any outstanding rotations needed to finish his training." JA:213. The CCC thus offered to reinstate Plaintiff as a second-year resident. JA:758. Plaintiff refused to repeat his second year of residency for a third time and demanded that he be reinstated as a third-year resident. The Program refused, so Plaintiff quit.

Plaintiff then brought this action alleging that racial and religious discrimination and retaliation motivated the Program's employment decisions. Plaintiff also alleged that Defendants

4

breached their employment agreement with Plaintiff and their own policies when terminating him and tortiously interfered with his employment agreement. Defendants moved for summary judgment, arguing that no reasonable jury could find that the decision to reinstate Plaintiff as a second-year resident flowed from a racial, religious, or retaliatory motive and that they complied with all the provisions of Plaintiff's employment agreement and their internal policies. The district court granted their motions, and Plaintiff now appeals. We review the district court's grant of summary judgment de novo, and we take the facts in the light most favorable to Plaintiff as the nonmovant.

The district court proceeded straight to Steps 2 and 3 of the familiar *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Step 2 asks whether the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action in question. *See Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023). The district court concluded that Defendants plainly articulated a legitimate, nondiscriminatory reason for refusing to promote Plaintiff: his continued, deficient clinical performance. We agree. The record is replete with examples of Plaintiff's poor performance in the clinical setting dating back to his earliest evaluations during his first year of residency. The district court then proceeded to Step 3 and shifted the burden back to Plaintiff to demonstrate that Defendants' proffered explanation was mere pretext for a discriminatory or retaliatory motive. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). At that stage, Plaintiff needed to "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id.* (cleaned up). The district court concluded that Plaintiff failed to offer enough evidence to support either a finding that the consistent negative

5

evaluations of his performance were uncredible or that his termination was actually due to discrimination or retaliation. Again, we agree.

As to Plaintiff's discrimination claim, no reasonable jury could conclude that Defendants were motivated in whole or in part by discriminatory intent. Plaintiff's deficient clinical performance began before any discriminatory remarks and continued long after they admittedly ceased. *See id.* at 45 (noting that the "consistency of the viewpoint expressed" supports the "proffered nondiscriminatory reason" for the adverse employment action). Second, the stray remarks came well before Plaintiff was constructively terminated. As we have explained, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (listing factors that district courts consider when determining if a remark is probative of discriminatory intent). Moreover, it was Plaintiff's clinical faculty who negatively evaluated his performance, and it is those faculty whom Plaintiff alleges discriminated against him. Here, the remark occurred about 1.5 years before Plaintiff was told to repeat his second year of residency for a third time. And Plaintiff testified that he couldn't "think of something that could or should have been done differently" in response to his complaint, JA:175, and that there were no further comments about his patka after he filed his complaint, JA:431-32. And although it was Plaintiff's burden to prove his ability to perform in the residency, he has not shown that he qualified for advancement. Finally, Plaintiff conceded that he never wore his patka at Open Door. JA:125-28. And the Open Door faculty gave Bassi consistently high marks for professionalism notwithstanding his poor academic performance. *See, e.g.*, JA:671. So accepting Bassi's theory would also require a jury to find that the

6

faculty agreed to inflate their professionalism scores to mask their true feelings. No reasonable jury could find Plaintiff's theory of discrimination to be supported by the record.

As to Plaintiff's retaliation claim, the evidence is even weaker. Throughout Plaintiff's residency—before and after his complaint—his clinical faculty expressed deep concern about his ability to succeed in a clinical setting. *See Weinstock*, 224 F.3d at 45. Plaintiff says that his negative evaluations escalated quickly in the wake of his complaint and that a physician at Open Door told him that filing the complaint "made things worse for [him]self." JA:1242. But the Appeals Committee, which consisted entirely of disinterested faculty, concluded in November 2016—some ten months after his complaint—that he had "demonstrated deficiencies with regards to his [second year] performance" and had "failed to meet expectations of the [second year] level of training." JA:710; *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding no retaliation where "extensive period of progressive discipline" began five months before filing EEOC charges). Plaintiff failed to offer evidence to support a finding that his performance would have been reviewed favorably had he not filed his complaint. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70–73 (2d Cir. 2015) (affirming grant of summary judgment where plaintiff failed to present sufficient evidence from which a reasonable jury could conclude "that the desire to retaliate was the but-for cause" of her termination).[1]

We have considered Plaintiff's remaining arguments, including his contractual claims, and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] Since we affirm the district court's grant of summary judgment, we need not decide whether NYMC employed Plaintiff.