23-407-cv
*Sharikov v. Philips Medical Systems MR, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————————

August Term, 2023

(Submitted: October 20, 2023      Decided: June 4, 2024)

Docket No. 23-407-cv

————————————————

ROMAN SHARIKOV,
*Plaintiff-Appellant*,

*v.*

PHILIPS MEDICAL SYSTEMS MR, INC.,
*Defendant-Appellee*.

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

————————————————

Before:      LIVINGSTON, *Chief Judge*, and KEARSE and CHIN, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the

Northern District of New York (Brenda K. Sannes, *Chief Judge*) dismissing

plaintiff-appellant's claims of disability discrimination and retaliation under the

Americans with Disabilities Act as well as his claims of wrongful termination

and breach of contract under state law. Plaintiff-appellant's employer, a federal contractor, discharged Sharikov after he refused to comply with its COVID-19 health and safety policies, including a vaccination mandate. Plaintiff-appellant contends that his employer discriminated against him because it regarded him as having a disability or a record of a disability and retaliated against him after he objected to the measures. The district court dismissed the claims for failure to state a claim upon which relief may be granted.

AFFIRMED.

_____

Roman Sharikov, *pro se*, Schodack Landing, NY.

Jamie Haar and Robert C. Petrulis, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., New York, NY, and Cleveland, OH, *for Defendant-Appellee*.

_____

CHIN, *Circuit Judge*.

The Americans with Disabilities Act (the "ADA") prohibits employment discrimination against individuals with a physical or mental impairment that substantially limits one or more major life activities, as well as individuals having a record of or who are regarded as having such an impairment. In this case, plaintiff-appellant Roman Sharikov alleges that his

2

former employer, defendant-appellee Philips Medical Systems MR, Inc. ("Philips"), a federal contractor, violated the ADA when it terminated his employment after he refused to comply with its COVID-19 health and safety measures, which included a vaccination mandate. Sharikov contends that he was covered by the ADA because (1) Philips "regarded" him as impaired because it treated him "as if he had an on-going and indefinite condition of impairment that made him a direct threat to others" and (2) Philips treated him as having a "record" of an impairment by requiring him to be vaccinated against COVID-19 and classifying him as being unvaccinated. *See* Appellant's Br. at 18-23. He also alleges that he was retaliated against for complaining that the policies were discriminatory.

Sharikov brought this action below in the United States District Court for the Northern District of New York. The district court (Brenda K. Sannes, *Chief Judge*), treating his proposed amended complaint as the operative complaint (the "Complaint"), rejected his assertion that Philips's companywide COVID safety and vaccine policies implicated his rights under the ADA. We agree with the district court that they did not, and hold that discharging an employee for failing to comply with generally applicable safety policies does not,

3

without more, equate to impermissible discrimination under the ADA. We also conclude that Sharikov failed to plead a plausible retaliation claim because the company-wide policies that he failed to comply with, resulting in the termination of his employment, were in place before he began his alleged protected activity. Accordingly, we affirm.

## BACKGROUND

### I.    The Facts

The facts alleged in the Complaint (and set forth in the documents attached thereto) are assumed to be true for purposes of this appeal. *See Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 701 n.1 (2d Cir. 2023) (citation omitted); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted).

In May 2016, Sharikov was employed by Philips in Moscow. On May 19, 2016, Philips confirmed that it was offering Sharikov a transfer to work in its Latham, New York office as a global support specialist. This was an at-will position. Philips agreed to sponsor Sharikov's application for U.S. work authorization and to provide him with relocation benefits for the move from Russia to New York. Sharikov accepted the offer on May 22, 2016.

4

In 2020, Philips began implementing health measures to fight the spread of COVID-19, including masking, glove wearing, temperature checking, testing, screening, and distancing. In October 2021, Philips advised its employees that the federal government had issued a mandate requiring federal workers and employees of federal contractors to be vaccinated against COVID-19.[1] Philips advised that its U.S.-based employees were required to be vaccinated against COVID-19 by December 8, 2021, as a condition of continued employment. Employees were required to "provide proof of vaccination by January 10, 2022, or have requested and qualified for a reasonable accommodation." Suppl. App'x at 417. Employees who failed to comply would be considered to have voluntarily quit as of February 4, 2022. Philips explained that it was complying with the requirements of the federal mandate "as a federal contractor and long-time trusted government partner," and because it "believe[d]

---

[1] The mandate was initially authorized by executive order in September 2021, which called for further guidance from the Safer Federal Workforce Task Force. *See* Exec. Order No. 14,042, 86 Fed. Reg. 50,985 (Sept. 9, 2021). The subsequent guidance required all employees of federal contractors, such as Philips, to be fully vaccinated against COVID-19. Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* 1 (updated Nov. 10, 2021), https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer%20Federal%20Workforce%20Task%20Force_20211110.pdf. Several lawsuits seeking to enjoin the mandate followed. *See, e.g., Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022). The President later rescinded the mandate in an executive order. *See* Exec. Order No. 14,099, 88 Fed. Reg. 30,891 (May 9, 2023).

it [was] the right thing to do as a health technology company." *Id*. Philips acknowledged that "some employees" had reservations about the vaccine, but concluded that "[d]ata shows the most proven and effective way of containing the virus, as well as preventing serious medical complications, is through vaccination." *Id*. at 418. In subsequent messages to employees, Philips repeated the admonition that employees had to be vaccinated or qualify for a reasonable accommodation as a condition of employment.

On November 16, 2021, Sharikov informed a Human Resources ("HR") manager at Philips that he had been experiencing "discrimination and harassment based upon disability." *Id*. at 379. In a meeting on November 19, 2021, Sharikov advised HR that he was "invoking [his] rights under [the] ADA" because he was "being regarded as disabled," and intended to document the harassment and discrimination he had experienced over the past few months. *Id.* He asked for "the individualized assessment determining he was a direct threat to the health of others." *Id*. at 355. The HR manager responded that Sharikov was required to comply with the vaccine policy and that Philips would consider him to have resigned and would stop supporting his work visa if he no longer worked for the company. When Sharikov pointed out that the federal vaccine

mandate had been stayed, the manager responded that the stay did not matter, as Philips would still implement the vaccine requirement as company policy. At the end of the meeting, Sharikov handed a copy of a document entitled "Notice of discrimination and harassment" to the HR manager.

On December 8, 2021, Philips sent an email to all employees with instructions on how to upload their "vaccination status." *Id*. at 449. The email also advised employees that although court rulings had placed the "federal contractor mandate on hold," Philips was continuing to require "vaccination of all employees," subject to local law and government and health authority policies and practices, as a matter of company policy. *Id*.

On December 9, 2021, Sharikov submitted a complaint to Philips's global ethics complaint report system claiming that Philips was:

> regarding me as having a disability (an impaired immune system and an impaired respiratory system) without any diagnosis or individualized assessment and has also made a record of such disability by mis-classifying me as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities. My employer is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent.

*Id*. at 455; *see also id*. at 381.

The next day, December 10, 2021, Sharikov filed by certified mail a

charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). The charge asserted the same claims as had been set forth in his internal complaint to the Philips ethics complaint system.

In early January 2022, Philips sent additional emails to its employees reminding them of the need, by January 10, 2022, to upload proof of vaccination or approval of an accommodation because of a medical disability or religious exemption. Sharikov refused to comply and complained of harassment and discrimination. On January 20, 2022, Philips advised Sharikov by email that he had not updated his vaccination status and did not have a pending request for an accommodation, and directed him to take corrective action. By email the same day, Sharikov advised his manager that he would not respond as directed.

On February 2, 2022, Sharikov's manager advised him that he would be fired effective February 4th for not being vaccinated, but that "the firing" would be recorded as a "'voluntary' resignation[,] which would affect any claim for unemployment benefits." *Id*. at 356-57. Sharikov wrote to Philips the same day reiterating his claims that he was being subjected to discrimination in violation of his rights under the ADA. Under the heading "Second Notice of Timely Response to Discriminatory Requests Based on Disability," Sharikov

8

asserted that Philips and the State of New York "both are regarding me as disabled with a contagious disease." *Id*. at 511.

Sharikov was advised that February 4, 2022, would be his last day of employment, and his access to his company accounts was blocked. On February 7, 2022, Sharikov learned from coworkers that they had been told by his manager that he had quit. He thereafter wrote to Philips, denying that he had resigned voluntarily and contending that he had been fired. On March 31, 2022, Sharikov was denied unemployment benefits.

## II. *The Proceedings Below*

In the two-count Complaint, submitted after Philips moved to dismiss, Sharikov alleged discrimination and retaliation in violation of the ADA, 42 U.S.C. §§ 12112, 12203(a).

In the first count, asserting discrimination, Sharikov did not allege that he suffered from an actual disability. Instead, he relied on alternative definitions of disability in 42 U.S.C. § 12102(1)(B) and (C), claiming that Philips had "regarded" him as having a disability or a "record" of a disability by requiring him to comply with its COVID-19 mitigation measures, including the vaccine mandate, or to obtain a religious or medical exemption, without

9

individualized assessment. Sharikov alleged that Philips unlawfully "sought to impose the policy's provisions upon [him] based upon the pure speculation, stereotype and generalization that he was infected or may in the future become infected with a deadly, contagious disease." Suppl. App'x at 361. He further alleged that Philips "made a record of disability by classifying [him] as an 'unvaccinated' employee." *Id*. at 366.

In the second count, alleging retaliation, Sharikov asserted that Philips punished him for his protected activity by not only terminating him but harassing him about vaccine policy compliance, "interfering with his VISA immigration status," and ignoring his claims that he was not required to comply with the policy. *Id.* at 370-72.

After Philips moved to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Sharikov cross-moved to strike the motion to dismiss or certain statements made therein and for leave to amend. He included with his papers the proposed new pleading, the Complaint. Philips opposed the cross-motions. The district court decided the motions based on the Complaint. It granted Philips's motion to dismiss for failure to state a claim and denied Sharikov's cross-motions to strike and for leave to amend, the latter on

grounds of futility. *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 292 (N.D.N.Y. 2023). The district court concluded that Sharikov failed to plausibly allege a disability under the ADA because he alleged only that Philips viewed him as "*potentially* infectious," rather than having a current impairment. *Id.* at 277-81. The district court further held that Sharikov failed to plausibly allege that Philips ever regarded him as actually being impaired, *id.* at 279, or treated him as having a record of a disability, *id.* at 280-81. The district court reasoned that accepting Sharikov's argument would mean accepting that Philips recorded all its employees as impaired, an implausible argument that other courts had also rejected. *Id.* at 279.

The district court also concluded that Sharikov's retaliation claim failed because, among other things, he did not plausibly allege that his protected activity was the cause of his termination, as Philips implemented its vaccine policy and COVID measures before Sharikov's protected activity. *Id.* at 281-87.[2]

Judgment was entered on March 7, 2023, and this appeal followed.

---

[2] The district court also dismissed Sharikov's hostile work environment, constructive discharge, and reasonable accommodation claims, and declined to exercise supplemental jurisdiction over his state law claims. *Id.* at 287, 291-92. As Sharikov does not challenge those decisions on appeal, we do not address them further. *See United States v. Brennan*, 650 F.3d 65, 137 (2d Cir. 2011) (concluding that arguments "not in the opening brief" were "forfeited").

### III.    *Discussion*

We review a dismissal for failure to state a claim *de novo*.  *See Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 94 (2d Cir. 2024) (citation omitted); *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019) (citation omitted).  Because Sharikov has been *pro se* throughout, his pleadings and other filings are interpreted to raise the strongest claims they suggest.  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-58 (2d Cir. 2017) (per curiam).  A complaint survives a Rule 12(b)(6) motion to dismiss if the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief.  *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023).  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia*, 834 F.3d at 230 (internal quotation marks and citation omitted).

While we are required to assume the truth of the "well-pleaded factual allegations" in the complaint, that obligation is "inapplicable to legal conclusions," such as "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

12

544, 555 n.3 (2007) (distinguishing between a "showing" of an "entitlement to relief," as required by Federal Rule of Civil Procedure 8(a)(2), and a mere "blanket assertion" of the same).  Legal conclusions, standing alone, "are not entitled to the assumption of truth" unless "supported by factual allegations" that "plausibly give rise to an entitlement to relief" -- a "context-specific" determination grounded in "judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

We review the denial of a motion for leave to amend based on futility *de novo.  See Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021) (citation omitted).

A.    *The Discrimination Claim*

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability. "  *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234-35 (2d Cir. 2015) (per curiam) (quoting 42 U.S.C. § 12112(a)).  The elements of an ADA claim are that:  (1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse

employment action because of his disability. *See id.* at 235 (citation omitted). The ADA protects not just those employees who are actually disabled, that is, employees who have "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), but also those who are discriminated against because they have "a record of such an impairment" or are "regarded as having such an impairment," *id*. § 12102(1)(B)-(C).

Here, there is no dispute that Philips was subject to the ADA or that Sharikov was qualified to perform his role and suffered at least one adverse action -- the termination of his employment. Likewise, Sharikov does not allege that he was actually disabled within the meaning of the ADA. Rather, he contends that he was discriminated against because he was perceived to be disabled, that is, because Philips "regarded" him as being impaired or because Philips treated him as having a "record of" an impairment. We conclude that Sharikov failed to plausibly state a claim under either the "regarded as" or the "record of" theory of discrimination.

### i. *The "Regarded as" Prong*

As the Complaint itself makes clear, Philips's COVID-19 mitigation measures applied to *all* its employees, not just to Sharikov. Suppl. App'x at 352

14

("The defendant's 'Covid-19 policy' imposed these measures upon *all of its workers* without considering the individualized medical assessment of each employee's health . . . ."), 361 ("[T]he policy's underlying assumption was that all of its employees were simultaneously at risk and also posed a risk to the health of all other employees.").  The documents attached to the Complaint show that Philips implemented the vaccine mandate for all its employees because (1) it was a federal contractor and the federal government had initially imposed a vaccine mandate for federal contractors, and (2) it concluded, even after the federal mandate was stayed, that a vaccine requirement was necessary to protect its employees and customers from the spread of COVID-19.[3]  When Sharikov

---

[3]      We note that this Court and others have upheld a variety of vaccination mandates against constitutional challenges.  *See, e.g.*, *Zucht v. King*, 260 U.S. 174, 175-77 (1922) (upholding a city's vaccination requirement for children to attend school); *Jacobson v. Massachusetts*, 197 U.S. 11, 12, 38-39 (1905) (upholding city's smallpox vaccination mandate); *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 136, 147-48 (2d Cir. 2023) (discussing the history of vaccine mandates and decisions upholding them, while affirming dismissal of constitutional challenges to state's decision to withdraw religious exemption to vaccination requirement for students); *Goe v. Zucker*, 43 F.4th 19, 24-25 (2d Cir. 2022) (affirming dismissal of constitutional and statutory challenges to limits on medical exemptions from student vaccination requirement); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272-74 (2d Cir. 2021) (per curiam) (holding that plaintiffs' constitutional challenge to state rule requiring certain healthcare workers to be vaccinated, without possibility of religious exemption, was unlikely to succeed), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (per curiam); *Phillips v. City of New York*, 775 F.3d 538, 540 (2d Cir. 2015) (per curiam) (affirming dismissal of constitutional challenge to state's vaccination requirement for public school students); *see also Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 279 (6th Cir. 2023)

refused to comply with the company-wide vaccine mandate or to seek a medical

or religious accommodation, Philips terminated his employment.[4]

Thus, the issue is whether an employee who is discharged for

refusing to comply with a company-wide vaccine mandate (that is, who refuses

to get vaccinated or to apply for a medical or religious exemption) is protected by

the ADA on the theory that he is regarded as being disabled. No circuit court

has addressed this precise issue,[5] but several district courts have held that a

---

(affirming dismissal of employees' Free Exercise Clause suit against private employer for imposing vaccine requirements under federal contractor vaccine mandate and denying their requests for religious accommodations).

[4]    We assume, as Sharikov contends, that he did not voluntarily resign and that he was fired instead.

[5]    Three circuits have addressed similar but somewhat different situations. In *Chancey v. BASF*, No. 23-40032, 2023 WL 6598065, at *1 (5th Cir. Oct. 10, 2023) (per curiam), the Fifth Circuit affirmed the dismissal of three ADA claims brought by the plaintiff, who had not been discharged and remained an employee. As relevant here, the Fifth Circuit concluded that the plaintiff failed to state an ADA discrimination claim by alleging that his employer's Covid-19 policies discriminated against him based on a "perceived disability." *Id.* at *2. In *Covel v. Community Physicians of North Port, P.A.*, No. 23-10853, 2024 WL 1923256, at *1-2 (11th Cir. May 1, 2024) (per curiam), the Eleventh Circuit affirmed the dismissal of an ADA retaliation claim brought by an employee who resigned from her position after the employer implemented accommodations to permit her to work unmasked despite a mask mandate. The Eleventh Circuit held, *inter alia*, that the employee had failed to plead a disability sufficient to trigger the protections of the ADA. *Id.* at *4. In *Taylor v. Vanderbilt University*, No. 23-5285, 2023 WL 10947219, at *1-2 (6th Cir. Nov. 1, 2023), the Sixth Circuit affirmed the dismissal of an ADA claim brought by a graduate student who was required, as a condition to continuing her studies and working as a research assistant, to take COVID-19 tests more frequently than her peers, concluding that she failed to state a claim under the ADA.

plaintiff in Sharikov's situation -- an employee who is discharged for refusing to comply with a company-wide vaccination mandate -- fails to state a claim under the ADA.[6]

The allegations of the Complaint make clear that Philips did not regard Sharikov as being disabled. A "disability" for the purposes of the ADA is defined as "(i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . or (iii) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g)(1). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*." *Id.* § 1630.2(j)(1)(ii) (emphasis added); *accord id.* § 1630.2(k)(2). Therefore, to be perceived as having a disability, one must be perceived as different from most people in the general population. Philips required *all* employees (other than those who received a religious or medical

---

[6]   *See, e.g.*, *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022) (holding that employee who was discharged for failing to comply with company-wide COVID-19 measures failed to plausibly state an ADA discrimination claim), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023); *Jorgenson v. Conduent Transp. Solutions, Inc.*, No. SAG-22-01648, 2023 WL 1472022, at *3-4 (D. Md. Feb. 2, 2023) (same); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-cv-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (same).

accommodation) to be vaccinated, and so Sharikov was not singled out because of any perception that he had an impairment that substantially limited him as compared to others.[7]  Accordingly, Philips did not regard Sharikov as disabled.

Indeed, the ADA was enacted to eliminate discrimination against "*individuals* with disabilities" or perceived to have disabilities, and to address "discrimination faced day-to-day by people *with* disabilities" or perceived to be disabled.  42 U.S.C. § 12101(b)(1), (4) (emphases added); *see Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013).  The ADA seeks to "assure *equality* of opportunity" for individuals with disabilities or perceived to have disabilities, 42 U.S.C.  § 12101(a)(7) (emphasis added), and these concerns are simply not implicated where an employee, like Sharikov here, is treated like every other employee.  *See Speaks*, 2022 WL 3448649, at *5 ("The Company did not classify Speaks as having any 'impairment' that limited one of her 'major life

---

[7]      *See Speaks*, 2022 WL 3448649, at *5 (holding that plaintiff failed to state a plausible "regarded as" claim because "[t]he Company only regarded Speaks as being required -- like all of its employees -- to obtain a COVID-19 vaccine or be approved for an exemption and then 'regarded' her as having failed to do so by the deadline to become vaccinated.  Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort." (footnote omitted)); *Shklyar*, 616 F. Supp. 3d at 926 ("[T]o infer that Carboline regarded [plaintiff] as having a disability would require inferring that Carboline regarded all of its RD&I employees as having a disability.  This . . . is not a reasonable inference.").

18

activities.'  Instead, she was simply required to become vaccinated under the Company's COVID-19 policy applicable to all employees.").

To the extent Sharikov argues that Philips treated him and other unvaccinated employees "'as if' they had an impaired or suppressed immune system that made them prone to contracting 'Covid-19,'" Suppl. App'x at 352, the district court correctly rejected the argument, *Sharikov*, 659 F. Supp. 3d at 278. Sharikov does not explain how adopting measures to prevent the spread of a communicable disease implies an impairment, and he cites no case law equating prophylactic measures with assumptions of disability.[8]  Moreover, taken to its logical conclusion, Sharikov's position would subject many companywide safety policies to potential challenge under the ADA on the theory that such policies perceived all employees as disabled.  Accordingly, we affirm dismissal of Sharikov's "regarded as" claim for failing to plausibly allege that Philips regarded him as disabled within the meaning of the ADA.

---

[8]    We otherwise agree with the district court that, to the extent the policy assumed that unvaccinated individuals might be more vulnerable to (and thus be more likely to spread) COVID-19 infections, Sharikov did not plead that he was "regarded" as having more than a "transitory and minor" impairment.  *See* 42 U.S.C. § 12102(3)(B); *Sharikov*, 659 F. Supp. 3d at 278.

19

### ii. *The "Record of" Prong*

The "record of" prong of Sharikov's discrimination claim fails for the same reasons that the "regarded as" claim fails -- the company-wide policy applied to all employees and was not based on any "record" Sharikov might have had of any disability or any classification that he was disabled.[9] The "record of" claim also fails on an additional ground.

To state a claim under the ADA based on a "record of" a disability, a plaintiff must allege that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Jorgenson*, 2023 WL 1472022 at *4 (quoting 29 C.F.R. § 1630.2(k)(1)); *accord Speaks*, 2022 WL 3448649, at *5 (citing 29 C.F.R. § 1630.2(k)(2)). Here, the Complaint fails to allege that Sharikov had a history of any such impairment or that he was recorded or classified as having any such impairment. Instead, the Complaint alleges only that Philips recorded him as not being vaccinated and not having applied for an exemption. These allegations fail to plausibly state a claim

---

[9] *See Jorgenson*, 2023 WL 1472022 at *4 ("Merely requiring Plaintiff to follow a COVID-19 safety policy applicable to all employees does not support the inference that [the employer] classified Plaintiff as disabled under ADA." (citation omitted)); *Shklyar*, 616 F. Supp. 3d at 926 ("Inferring that Carboline misclassified Shklyar as having a disability would therefore require inferring that Carboline misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable.").

20

for relief. Sharikov provides no support for the suggestion that tracking the vaccination status of employees implies a particular impairment or vulnerability in any individual employee. A record that an employee is not vaccinated does not imply that the employee has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population." 29 C.F.R. § 1630.2(k)(2).

Accordingly, we affirm the dismissal of Sharikov's claim under the "record of" prong as well.

### B. *The Retaliation Claim*

Sharikov has also failed to plausibly allege an ADA retaliation claim because he has not adequately pleaded a causal connection between his protected activity and a material adverse action.

It is a violation of the ADA for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222 (2d Cir. 2001) (quoting 42 U.S.C. § 12203(b)). An employer may not take adverse action against an employee for engaging in "protected activity." *See Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (internal quotation

21

marks and citation omitted). An employee can satisfy the protected activity requirement even if "his condition was not a disability within the meaning of the ADA" so long as "he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated" the ADA. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (internal quotation marks and citations omitted). An adverse action is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination," and "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks and citations omitted) (describing Title VII retaliation standard); *Sarno*, 183 F.3d at 159 (explaining that ADA and Title VII retaliation provisions are substantially similar).

To prove a causal connection, a plaintiff must show that "but for" the protected activity, the adverse action would not have been taken. *See Tafolla*, 80 F.4th at 125 (internal quotation marks omitted) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019)). Causation may be shown either through direct evidence of retaliatory animus or "indirectly, by showing that the

protected activity was followed closely by discriminatory treatment." *Id.* at 125 (internal quotation marks and citation omitted).

Here, Sharikov failed to plausibly allege that but for his protected activity -- his complaints about Philips's COVID-19 policies to his managers, the global ethics complaint line, and the EEOC -- he would not have been fired. The allegations of the Complaint instead make clear that Sharikov was discharged because he refused to comply with the company-wide policies first announced in October 2021, when all employees were told they had to be vaccinated or approved for an exemption by February 4, 2022 or be deemed to have resigned. This message was sent to all employees before Sharikov engaged in any protected activity. Indeed, the Complaint and attached documents show that his alleged protected activity began in November 2021, after the February 4 date had been set.

Thus, rather than show Sharikov was terminated because of his protected activity, the allegations in the Complaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy. Because the policy applied to all employees regardless of whether they had engaged in protected activity, Sharikov has not plausibly pleaded a connection between his

invocations of the ADA and his termination.

Sharikov alleges other purported adverse actions, including that Philips harassed him about vaccine policy compliance and ignored his assertions that he was not required to comply with the vaccine policy. But these purported actions are not a sufficient basis to state a cause of action. In the Title VII context, which utilizes the same standards as ADA claims, *see Sarno*, 183 F.3d at 159, we have held that allegations of adverse actions that occur as a "result of generally applicable workplace policies" fail to state a retaliation claim because "absent allegations of more direct hostile conduct, a reasonable employee would not be dissuaded from taking protected action simply because [he is] subject to the same policies as other employees." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). The documents attached to the Complaint demonstrate as a matter of law that Philips's reminders about its vaccine policy were sent to all employees and were not directed at Sharikov to dissuade or prevent him from (or to punish him for) engaging in protected activity.

Finally, Sharikov alleges that Philips retaliated against him by advising him that it would not support his efforts to obtain a work visa once his employment was terminated. But he acknowledges in his brief that Philips did

24

not directly threaten his immigration status, and instead explained that the company would not provide immigration assistance (such as visa support) if Sharikov ceased being an employee. Thus, the immigration consequences he cites were the result of his employment being terminated, which resulted from his refusal to comply with Philips's company-wide policy by being vaccinated or applying for an exemption. Hence, his protected activity was not a but-for cause of Philips's decision to withdraw its support for his visa application once his employment was terminated.

Accordingly, we agree with the district court that Sharikov failed to state a retaliation claim.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment of dismissal.