25-775-cv
*Lafayette v. Blueprint Basketball*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand twenty-five.

PRESENT:
> GUIDO CALABRESI,
> DENNY CHIN,
> EUNICE C. LEE,
> > *Circuit Judges.*

———————————————————————

Robert Lafayette,

> *Plaintiff-Appellant*,

> v.                                                            No. 25-775-cv

Blueprint Basketball, Byron Robertson,
Cara Caswell, Burlington School District,
Vermont Elite, Sam Jackson,

> *Defendants-Appellees*,

Thomas C. Nuovo, Joseph Farnham,

Joseph McNeil, Winooski School District,

*Defendants.*

_____

FOR PLAINTIFF-APPELLANT:                          Robert Lafayette, pro se,
                                                  Morrisville, VT.


FOR DEFENDANTS-APPELLEES                           Thomas C. Nuovo, Bauer
BLUEPRINT BASKETBALL, BYRON                        Gravel Farnham, LLP,
ROBERTSON, AND CARA CASWELL:                       Colchester, VT.


FOR DEFENDANTS-APPELLEES                           Joseph A. Farnham,
SAM JACKSON, VERMONT ELITE, AND                    McNeil, Leddy &
BURLINGTON SCHOOL DISTRICT:                        Sheahan, P.C., Burlington,
                                                  VT.


Appeal from a judgment of the United States District Court for the District of Vermont (Crawford, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Robert Lafayette, proceeding *pro se*, appeals the district court's judgment dismissing his action.   Lafayette commenced this action against Blueprint Basketball and others after Blueprint prohibited him from attending games and practices and removed his son from Blueprint's basketball team.   In his Second Amended Complaint, Lafayette sought to assert discrimination, failure to accommodate, and retaliation claims under the

2

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as various state law claims, against a slew of defendants.[1]  The defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim.  The district court granted the motions, holding that Lafayette failed to state a claim under the ADA, and declining to exercise supplemental jurisdiction over the state law claims.  *See Lafayette v. Blueprint Basketball*, No. 23-CV-631, 2025 WL 1013960, at *10 (D. Vt. Mar. 31, 2025).  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**STANDARD OF REVIEW**

"[W]e review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Moreira v. Société Générale, S.A.*, 125 F.4th 371, 387 (2d Cir. 2025) (citation modified). Because Lafayette "has been *pro se* throughout, his pleadings and other filings are interpreted to raise the strongest claims they suggest." *Sharikov v. Philips Med. Sys. MR,*

---

[1] Specifically, in the Second Amended Complaint, Lafayette named Blueprint Basketball, Byron Robertson, Cara Caswell, Burlington School District, Vermont Elite, and Sam Jackson as Defendants.  He named several additional defendants in his initial Complaint.

*Inc.*, 103 F.4th 159, 166 (2d Cir. 2024).

## DISCUSSION

As an initial matter, it is unclear whether Lafayette intended to bring his claims only under the ADA's public accommodations provisions (Title III), or if he also intended to bring his claims under the ADA's employment provisions (Title I) based on his time as a volunteer assistant coach with Blueprint. *See* Second Am. Compl. at 11–13, *Lafayette v. Blueprint Basketball*, No. 23-CV-631, 2025 WL 1013960 (D. Vt. Mar. 31, 2025), Dkt. 24 (stating that Blueprint and Vermont Elite are both subject to Title III of the ADA but also citing 42 U.S.C. § 12112(b)(4), which pertains to employment discrimination under the ADA). In any event, for the reasons set forth below, Lafayette fails to state a claim under either Title I or Title III of the ADA.

First, the district court correctly held that Lafayette failed to state a discrimination claim under the ADA. To establish a prima facie discrimination claim under Title III based on public accommodations, a plaintiff must show "that: (1) [they are] a qualified individual with a disability; (2) the defendant is an entity subject to the Act[]; and (3) the plaintiff was denied the opportunity to participate in or benefit from . . . services, programs, or activities or was otherwise discriminated against on the basis of disability." *Costin v. Glen Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024) (citation modified).

4

Here, Lafayette alleged that he and his son were denied the opportunity to continue participating in Blueprint's offerings, including playing on the team and attending practices and games.[2] However, even assuming that Lafayette was a qualified individual with a disability and that Blueprint was subject to the ADA, he did not plausibly allege that he was banned from future Blueprint games and practices because of a disability. According to Lafayette's own allegations, he criticized a referee at a game, resulting in his ejection from the game, and Blueprint thereafter banned him from future games and practices. Lafayette further alleges that Blueprint removed his son from the team after Lafayette emailed Blueprint to "advise[] his disgust" with its decision to ban Lafayette from games and practices. Second Am. Compl. at 6, *Lafayette v. Blueprint Basketball*, No. 23-CV-631, 2025 WL 1013960 (D. Vt. Mar. 31, 2025), Dkt. 24. These allegations do not raise a plausible inference of disability discrimination; instead, they suggest that Lafayette and his son were barred due to Lafayette's disruptive behavior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (citation

---

[2] Because Lafayette is not an attorney, he cannot bring legal claims on behalf of his son. *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."). As a result, the Court does not address any such claims.

modified)).

Similarly, to the extent Lafayette sought to assert an employment discrimination claim under Title I, he was unsuccessful.

> The elements of an ADA [employment discrimination] claim are that: (1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of his disability.

*Sharikov*, 103 F.4th at 166.

Lafayette alleged that he was a volunteer assistant coach with Blueprint, but after the incident with the referee, Blueprint prohibited him from attending future games and practices. Again, however, Lafayette did not plausibly allege that Blueprint took these actions "because of his disability." *See id.* As described above, Lafayette's own allegations reflected that Blueprint banned him from games and practices following the incident with the referee. Though Lafayette suggested that his behavior resulted from his disability, that is of no moment: "[U]nder the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012). Thus, Lafayette has failed to state an employment discrimination claim under the ADA.

6

Second, the district court correctly held that Lafayette did not state an ADA claim for failure to accommodate.   Under Title III, discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when . . . necessary [for an] . . . individual[] with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of [its] . . . services."   42 U.S.C. § 12182(b)(2)(A)(ii); *see PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001).   In the Title I employment context:

> To make out a *prima facie* disability discrimination case based upon a failure to accommodate, a plaintiff must establish that: (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (citation modified).

Here, Lafayette did not allege what accommodation, or type of accommodation, any of the defendants should have proactively offered him.   And he does not allege that any of the defendants refused any accommodation that he requested.   To the contrary, Lafayette alleged that Blueprint had previously *granted* him an accommodation excusing him from "game bookkeeping duties."   Second Am. Compl. at 4, *Lafayette v. Blueprint Basketball*, No. 23-CV-631, 2025 WL 1013960 (D. Vt. Mar. 31, 2025), Dkt. 24.   Insofar as Lafayette seeks to frame his request for excusal of his behavior in the incident with the

7

referee as an accommodation, a "requested accommodation that simply excuses past misconduct is unreasonable as a matter of law." *McElwee*, 700 F.3d at 641. Because Lafayette does not allege that any defendant refused to accommodate him, he has failed to state a prima facie claim for failure to accommodate.

Third, the district court correctly concluded that Lafayette failed to state a retaliation claim under the ADA.

> [T]he elements of a retaliation claim under . . . the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."

*Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (citation modified).

Even if Lafayette engaged in protected activity and suffered adverse actions, his allegations failed to plausibly suggest a causal connection between the alleged protected activity and adverse actions. Lafayette offered an attenuated and vague chain of events, namely that he contacted Robertson, who then contacted Lafayette's son's coach, who in turn accused Lafayette of lying and took various actions against his son. Although Lafayette alleged that the coach took these actions after communicating with Robertson, Lafayette did not offer any further details about what was communicated from Robertson to the coach, what actions the coach took, or how those actions harmed Lafayette and his

8

son, apart from reducing his son's playing time. In sum, Lafayette's allegations of retaliation do not "nudge[] [his] claims across the line from conceivable to plausible," and therefore this claim also fails. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

We have considered all of Lafayette's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court